21 P.3d 716 (2001)
105 Wash.App. 800
Darla A. BROWN & Tom E. Brown, wife and husband, Respondents,
v.
Rudolph HAUGE & Ilena Hauge, husband and wife, individually and the marital community, Petitioners.
No. 19114-1-III.
Court of Appeals of Washington, Division 3, Panel Four.
April 19, 2001.
*717 Bruce E. Cox, Layman, Layman & McKinley, Everett B. Coulter, Jr., Evans, Craven & Lackie, Spokane, for Petitioners.
Dustin D. Deissner, Spokane, for Respondents.
SCHULTHEIS, J.
Darla and Tom Brown ran a residential home care facility for elderly people. The facility building was owned by Rudolph and Ilena Hauge, who leased it to the Browns. Ms. Brown tripped over the threshold of the front door one day and broke both of her legs. The Browns sued the Hauges for negligence, gross negligence, and tortious conduct. The trial court granted summary judgment dismissal of all claims except the one that sought recovery for breach of the lease agreement. On appeal, the Hauges contend neither the terms of the lease nor the actions of the parties created a duty to alter the threshold. Because we find that the Hauges had no duty under the lease to repair a condition that did not constitute an unsafe defect, we reverse and remand for summary dismissal.
The facts are not disputed. The Hauges, who lived in Texas, owned a house in Spokane that they leased to the Browns as a residential home care facility. The Browns lived in the home with two of their children and anywhere from one to three elderly residents. When the parties entered into the month-to-month lease in April 1996, Ms. Brown and Ms. Hauge talked about the high threshold on the front door. The Browns used the front door, which had a ramp to the street, for taking the elderly residents in and out of the house. Ms. Brown was concerned that it would be difficult to push wheelchairs over the doorsill. On the other hand, she did not see the high threshold as a safety problem. Ms. Hauge said she would discuss the threshold with her husband.
According to paragraph 9 of the lease agreement, the Hauges were obligated to "[m]aintain all structural components in good repair" and to "[k]eep common areas reasonably clean and safe from defects increasing the hazards of fire or accident[.]" Clerk's Papers (CP) at 45. Paragraph 15 included the following terms:
Any & all repairs, additions, improvements, etc. to dwelling and premises must be okayed by landlord, prior to any work being done. Expenses incurred for said work [are] negotiable between parties.
....
Tenant is to notify landlord of any repairs, improvements, etc. All work to be done by a licensed & bonded contractor. Again, all expenses will be negotiable. Landlord reserves the right to deny any such work, unless landlord sees necessary.
CP at 87 (emphasis in original). Ms. Brown claims she called the Hauges once or twice in May or June 1996 to talk about leveling the doorsill, but she never got a decision from them about this alteration.
In mid-March 1997, Ms. Brown walked out the front door, turned to step back in, and caught her shoe on the threshold. She fell, striking both shins on the threshold. Both of her lower legs were broken on impact. At the time of the accident, the Browns were looking for a new facility because the Hauges did not seem interested in remodeling their property to meet codes requiring larger windows and a firewall. After her fall, Ms. Brown was confined to bed and to a wheelchair for a while and had to find alternate *718 accommodations for the only remaining elderly resident.
The Browns sued the Hauges in December 1998. They claimed the Hauges breached a duty to provide their tenants with safe premises. This duty was breached, they alleged, when the Hauges failed to remedy an "excessively high" front threshold that was "in violation of existing building codes and standards." CP at 3. In deposition testimony, Ms. Brown admitted that she never considered the doorsill a safety concern or a hazard to anyone. The reason she wanted to level the threshold was to make it more convenient for her elderly clients. She estimated she walked over the threshold at least 740 times in the two years she worked and lived at the facility.
In September 1999, the Hauges moved for summary judgment dismissal of the Browns' claims. The trial court dismissed claims based on a latent defect and warranty of habitability, but found that a question of fact remained as to a contract basis for the Browns' claim. Specifically, the court found that paragraphs 9 and 15 in the lease agreement created a question of fact regarding the Hauges' duty. In the letter to the parties denying the Hauges' motion for reconsideration, the court further explained: "The Defendants had a duty to the tenants (with full knowledge that some of the tenants were elderly people) to maintain the premises in good structural condition. Whether or not that duty was breached is a question of fact for the jury." CP at 106 (emphasis in original). The Commissioner of this court granted discretionary review.
On appeal, the Hauges contend they had no duty under the lease to change the height of the doorsill. Because this is a review of a summary judgment, we consider the facts in the light most favorable to the Browns (the nonmoving parties), who carried the burden of establishing that the Hauges owed them a duty. Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wash.2d 506, 515-16, 799 P.2d 250 (1990).
Under the common law, a landlord generally is not liable to a tenant for personal injuries caused by a defective condition in the premises. Teglo v. Porter, 65 Wash.2d 772, 773, 399 P.2d 519 (1965); Sample v. Chapman, 7 Wash.App. 129, 132, 497 P.2d 1334 (1972). One exception to this rule imposes tort liability if the landlord covenants to maintain the premises in good repair, but fails to do so. Teglo, 65 Wash.2d at 774, 399 P.2d 519; McCourtie v. Bayton, 159 Wash. 418, 423, 294 P. 238 (1930); Mesher v. Osborne, 75 Wash. 439, 446, 134 P. 1092 (1913). The tenant may recover for personal injuries caused by the landlord's breach of a repair covenant only if the unrepaired defect created an unreasonable risk of harm to the tenant. 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICEREAL ESTATE: PROPERTY LAW § 6.38, at 345-46 (1995). The RESTATEMENT (SECOND) OF TORTS § 357 (1965) provides that the lessor of land is liable if (a) the lessor has contracted to keep the land in repair; (b) the disrepair creates an unreasonable risk that performance of the lessor's agreement would have prevented; and (c) the lessor fails to exercise reasonable care in performing the agreement. See also Teglo, 65 Wash.2d at 774, 399 P.2d 519 (citing RESTATEMENT, TORTS § 357 cmt. a).
Because the duty arises out of the covenant to repair, the contract defines the extent of the duty. Id. In this case, paragraph 9 of the Brown/Hauge lease states that the landlord is obliged to maintain "all structural components" in good repair; to keep the common areas "reasonably clean and safe from defects increasing the hazards of fire or accident;" and to maintain the electrical, plumbing, heating "and other facilities" and appliances in "reasonably good working order." CP at 45.
We first address whether the high threshold constitutes a structural component in disrepair, a defect that increases the hazard of accident, or a facility that is not in reasonably good working order. Ms. Brown contends she discussed with Ms. Hauge the need to change the height of the doorsill as a convenience to her residents that used wheelchairs. Photographs in the record show that the threshold rises by increments to a height about three inches above the porch floor. The doorsill does not appear to be unusual, *719 and the Browns provide no evidence that it does not meet code requirements. On the contrary, Ms. Brown testified that a state licensor investigated the home and required changes only to the windows, the back entry, the wheelchair ramp, a water tank, and a wall that needed to be converted to a firewall. As a structural component, the doorsill apparently is not in disrepair. Further, it does not constitute a facility or appliance. Consequently, it can only qualify as a common area, which the Hauges promised to keep reasonably safe from defects that would increase the hazard of accident.
The Hauges are liable only if they did not take reasonable action to repair an unsafe defect in the common area that had been called to their attention. Teglo, 65 Wash.2d at 774, 399 P.2d 519. But Ms. Brown did not ask the Hauges to repair an unsafe condition. She did not consider the high doorsill particularly hazardous. Nothing in the record indicates the Hauges were put on notice of an unsafe condition that required their attention.
Finally, paragraph 15 of the lease indicates that the Browns could have proposed the improvement to the threshold, gotten bids for the work, and negotiated the costs with the Hauges. The record simply does not show that they pursued the renovation beyond discussions in the first two or three months of the lease.
The existence of a duty is the primary question in a negligence action and is a question of law. Tincani v. Inland Empire Zoological Soc'y, 124 Wash.2d 121, 128, 875 P.2d 621 (1994). Here, the Browns fail to defeat summary judgment because they do not establish disputed facts material to the Hauges' alleged duty to level the threshold. Accordingly, we reverse the trial court's denial of the Hauges' motion for summary judgment and remand for summary dismissal of the remaining cause of action.
Reversed and remanded for entry of summary judgment dismissal of the remaining cause of action.
I CONCUR: KATO, J.
SWEENEY, A.C.J. (dissenting).
I agree that the lease here created a duty of ordinary care on the part of Rudolph and Ilena Hauge. The questions then (on liability anyway) are whether the landlord breached that duty and whether the plaintiff, Darla Brown, contributed to her own injuries. Hertog v. City of Seattle, 138 Wash.2d 265, 275, 979 P.2d 400 (1999)(whether defendant breached a duty of care is question of fact); RCW 4.22.070(1)("trier of fact shall determine the percentage of the total fault..."). Those are questions of fact. And no matter how thin I believe the liability may be, those questions ought to be resolved by a trier of fact, not us. For these reasons I respectfully dissent.
Here, Darla and Tom Brown complain that the three-inch difference in the door entryway was a tripping hazard. And Mr. Brown tripped over that threshold. For me, whether the landlord should have repaired the threshold (with or without the Browns' complaint) is a question of fact. If they should have and did not, then they breached the duty of ordinary care imposed by the lease agreement. And if each is somewhat responsible, then comparative negligence accommodates any variation of percentage responsibility between the landlord and the tenant here. RCW 4.22.070(1).
I would affirm the trial judge's denial of the summary judgment on the Browns' contract claim.