75 P.3d 980 (2003)
118 Wash.App. 246
Don TUCKER and Shalee Miller, individually; Shalee Miller, as the guardian and parent of Alan Miller and Robert Miller, both minors; and Don Tucker and Shalee Miller, as the guardians and parents of Cheyanne Tucker, a minor, Appellants,
v.
Robert HAYFORD and Dakota Hayford, husband and wife, Respondents.
No. 21544-0-III.
Court of Appeals of Washington, Division 3, Panel Nine.
September 4, 2003.
George B. Fearing, Kennewick, WA, for Appellants.
Jeffrey T. Sperline, Rettig, Osborne, Forgette, Kennewick, WA, for Respondents.

OPINION PUBLISHED IN PART
SWEENEY, J.
We again note that a claim for personal injuries by a tenant can be premised on three distinct legal theories: contract (a rental agreement), common law obligations imposed on a landlord, and the Washington Residential Landlord-Tenant Act of 1973 (Landlord-Tenant Act), chapter 59.18 RCW. In Dexheimer *981 v. CDS, Inc.[1] we concluded that the remedies available to a tenant under the Landlord-Tenant Act were limited to those outlined in the statute. We were wrong.
Here, the tenants claim that they became sick from drinking contaminated well water provided as part of their tenancy. The trial judge dismissed all of their causes of actioncontract, Landlord-Tenant Act, and common lawconcluding that the Landlord-Tenant Act limited all rights to those specifically enumerated in the act. We conclude that the tenants' showing on summary judgment is sufficient to support causes of action based on contract, the Landlord-Tenant Act, and the common law. We therefore reverse the summary dismissal of their claims.

FACTS
Robert Hayford bought a lot and mobile home in Kennewick, Washington from Mike Kirby in 1994. A domestic well supplied water to the home.
The well water was tested on December 8, 1993. On March 15, 1994, the Benton Franklin District Health Department wrote to Mr. Kirby that: (1) the nitrate level of the well water was 8.8 mg/L;[2] (2) the well was free of bacterial contamination; (3) the sanitary seal was improperly installed and maintained; and (4) chemicals were stored within 100 feet of the well. And "to protect and improve" the water system, the health department recommended that: (1) the sanitary seal be properly installed; and (2) the chemicals be stored at least 100 feet from the well. The health department also recommended that the well be tested yearly:
The Benton-Franklin District Health Department recommends that all wells be tested at least once a year for bacteriological quality and nitrates be tested every three years. The preceding information should be useful to you in evaluating the needs of your water system. A pamphlet on water quality has been enclosed for your information.
Clerk's Papers (CP) at 181.
Mr. Hayford "thumbed through" the report but depended on his real estate agent to call any problems to his attention. CP at 185. And the agent apparently did not.
Mr. Hayford leased the home to Don Tucker and Shalee Miller (now Tucker) in October of 1998. Mr. and Ms. Tucker asked if the well water was drinkable. Mr. Hayford said it was as long as a "Brita" filter[3] was used. He said that the nitrates were a bit high.
The Tuckers have four children, one was born after they moved out of the home. The Tuckers signed a written residential lease prepared by Mr. Hayford. They ultimately extended the tenancy through August 1, 2000. The Tucker family all became ill. The family's pediatric nurse practitioner suggested that they test their well water. The test, dated March 28, 2000, showed bacteria in the water. The Tuckers told Mr. Hayford. He had the well repaired and that solved the problem.
The Tuckers moved out of the home on May 15, 2000. They sued Mr. Hayford for damages for personal injury arising from contaminated water. Mr. Hayford moved for summary judgment. The trial court concluded that the landlord's legal obligations were ultimately governed by the Landlord-Tenant Act. And, relying on our decision in Dexheimer; the judge concluded that the Tuckers were not entitled to personal injury damages under the act. He also concluded that Mr. Hayford had no notice of any defect. And he dismissed the Tuckers' complaint.

DISCUSSION
The Tuckers sued for damages based on their contract (obligation to perform major maintenance and repair, and covenant of quiet enjoyment); violation of the Landlord-Tenant Act; and negligent misrepresentation *982 as to the water quality. We evaluate the viability of each claim.
STANDARD OF REVIEW
This is an appeal from summary judgment. So we engage in the same inquiry as the trial court. Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994). Summary judgment is appropriate "if the pleadings, depositions, ... [and] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "A material fact is one upon which the outcome of the litigation depends." Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993). And we consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. Mountain Park, 125 Wash.2d at 341, 883 P.2d 1383. The burden is on the moving party to prove no genuine issue of material fact exists. Jacobsen v. State, 89 Wash.2d 104, 108, 569 P.2d 1152 (1977).
CONTRACT CLAIMS
Obligations Imposed by This Contract. Brown v. Hauge spells out the contract exception to the general rule of nonliability:
The tenant may recover for personal injuries caused by the landlord's breach of a repair covenant only if the unrepaired defect created an unreasonable risk of harm to the tenant. The Restatement (Second) of Torts § 357 (1965) provides that the lessor of land is liable if (a) the lessor has contracted to keep the land in repair; (b) the disrepair creates an unreasonable risk that performance of the lessor's agreement would have prevented; and (c) the lessor fails to exercise reasonable care in performing the agreement.
Brown v. Hauge, 105 Wash.App. 800, 804, 21 P.3d 716 (2001) (citation omitted). The contract defines the extent of the duty when a landlord's duty arises out of a covenant. Id.
Both the trial court and Mr. Hayford, here on appeal, rely on our decision in Brown for the proposition that the landlord must have notice of the "defect" before he is subject to liability. Mr. Hayford argues, and the trial court agreed, that Brown is a general statement of the law on notice. We do not read our decision in Brown so broadly.
In Brown the landlord had notice of the tenant's problem (a high door sill). The holding in Brown turned on the nature of the claimed defect, not notice. The contract required the landlord to keep the common areas "reasonably clean and safe from defects increasing the hazards of fire or accident." Brown, 105 Wash.App. at 804, 21 P.3d 716. So, the court reasoned, the landlord was only obligated to do something about the door sill if it was unsafe. All agreed the door sill was inconvenient for the tenants, but nobody not the landlord, the tenants, nor a state agent who inspected the premises for a residential adult care facility licenseconsidered it unsafe. Id. at 802, 803, 805, 21 P.3d 716. The court ultimately held that the landlord would not be liable under the contract's safety provision because the door sill was not then unreasonably unsafe. Id. at 805, 21 P.3d 716.
Brown did rely on Teglo v. Porter.[4]Brown, 105 Wash.App. at 804, 21 P.3d 716. Teglo in turn adopted portions of the Restatement of Torts which are relevant to the claims here:
"The lessor's duty to repair ... is not contractual but is a tort duty based on the fact that the contract gives the lessor ability to make the repairs and control over them. ... Unless the contract stipulates that the lessor shall inspect the premises to ascertain the need of repairs, a contract to keep the interior in safe condition subjects the lessor to liability if, but only if, reasonable care is not exercised after the lessee has given him notice of the need of repairs."
Teglo v. Porter, 65 Wash.2d 772, 774-75, 399 P.2d 519 (1965) (emphasis added) (quoting RESTATEMENT OF TORTS § 357 cmt. a (1934)).
Notice then under this provision of the Restatement becomes an issue when the particular condition under consideration is inside the residence where the landlord has no *983 right to enter. But that is not the case here. The source of water here was an outside well, which the landlord had physical access to. Actual notice is not then required.
Here the lease includes (1) an express covenant of quiet enjoyment[5] and (2) requires that the lessor maintain and repair the leased premises.[6]
So the factual question is the usual threshold question where the claim has been dismissed on motionwhether the condition of this well interfered with their quiet enjoyment of the home, or whether the well required "major maintenance" as spelled out in the lease agreement.
Quiet Enjoyment. No Washington case directly addresses the impact of drinking water on one's quiet enjoyment of his home. Washington does, however, recognize the relationship of water and habitability. In State ex rel. Andersen v. Superior Court, the court held that without water, a property is uninhabitable. State ex rel. Andersen v. Superior Court, 119 Wash. 406, 407-08, 205 P. 1051 (1922). And in Mitchell v. Straith, the court held that a water system that used an "unusual" approach, but did not affect the water quality, did not render the property uninhabitable. Mitchell v. Straith, 40 Wash. App. 405, 412, 698 P.2d 609 (1985). And in Mathes v. Adams, as the Tuckers point out, the Montana court ultimately held that unsafe drinking water renders a rental property uninhabitable. Mathes v. Adams, 254 Mont. 347, 353, 838 P.2d 390 (1992).
Other jurisdictions have also held that a property without potable water is uninhabitable.[7]
It is well settled that unsafe drinking water renders a home uninhabitable. And that by definition interferes with the quiet enjoyment of the home.[8] The Tuckers have made out an actionable claim for breach of the covenant of quiet enjoyment if we look at the evidence in the light most favorable to the Tuckers.
Major Maintenance and Repair. A health inspector recommended that this well be tested at least annually for bacteria. The question then is whether a reasonable person knew or in the exercise of ordinary care should have known that this well should have been tested annuallyas part of the major *984 maintenance of this home. Again, the evidence, viewed in a light most favorable to the Tuckers, includes high nitrate levels together with a recommendation for yearly bacteria testing. That is a sufficient showing to support a breach of the major maintenance and repair covenant of this lease, if proved.
DUTIES AT COMMON LAW
Traditional Common Law Landlord Liability. Common law landlord liability requires a showing: "(1) latent or hidden defects in the leasehold (2) that existed at the commencement of the leasehold (3) of which the landlord had actual knowledge (4) and of which the landlord failed to inform the tenant." Frobig v. Gordon, 124 Wash.2d 732, 735, 881 P.2d 226 (1994). The landlord need not discover obscure defects or dangers, nor does the law impose any duty to repair defective conditions. Aspon v. Loomis, 62 Wash. App. 818, 826-27, 816 P.2d 751 (1991). A "landlord is liable only for failing to inform the tenant of known dangers which are not likely to be discovered by the tenant." Id. at 827, 816 P.2d 751.
The Tuckers moved into this home in 1998. The well was last tested in 1993. It was not tested again until after the Tuckers tested it in 2000. But this was after the Tuckers got sick. It had not then been tested for the five years prior to the Tuckers' moving in despite a recommendation by the health department that it be tested annually. This well was not then maintained at the time the property was leased to the Tuckers. And the condition of the water was certainly hidden or latent as to the Tuckers. Mr. Hayford did not warn the Tuckers. Mr. Hayford was aware of the report that required the annual testing. The Tuckers have then raised an issue of fact whether Mr. Hayford knew or should have known of this latent defect.
A "should have known" standard is enough since we have eased the strict requirement of actual knowledge. It is sufficient that the landlord knew or should have been able to identify a defect unknown to the tenant at the time of the initial tenancy. Taylor v. Stimson, 52 Wash.2d 278, 280-81, 324 P.2d 1070 (1958); see also Johnson v. Dye, 131 Wash. 637, 230 P. 625 (1924) (basing liability on constructive knowledge where landlord would have discovered the defect if he had made the repairs he was supposed to make near the defect).
Implied Warranty of Habitability.
A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:
(1) an implied duty of habitability; or
(2) a duty created by a statute or administrative regulation.
RESTATEMENT (SECOND) OF PROPERTY § 17.6 (1977) (emphasis added).
We adopted this section of the Restatement in Lian v. Stalick.[9] There, we recognized a cause of action for the implied warranty of habitability under the Landlord-Tenant Act according to subpart (1) of the Restatement. Lian v. Stalick, 106 Wash. App. 811, 822, 25 P.3d 467 (2001).
Lian then supports the Tuckers' cause of action under subpart (1) of section 17.6 of the Restatement.
RESIDENTIAL LANDLORD-TENANT ACT
The Tuckers next argue that contrary to our holding in Dexheimer v. CDS, Inc.,[10] the Landlord-Tenant Act allows a remedy for personal injury damages.
The Uniform Residential Landlord and Tenant Act (Uniform Landlord-Tenant Act) was drafted by the National Conference of Commissions on Uniform State Laws in 1972. 5 THOMPSON ON REAL PROPERTY § 43.05(b), at 385 (David A. Thomas ed., 1994). While Washington made "substantial changes" to the Uniform Landlord-Tenant Act when it adopted its own Landlord-Tenant Act, our state's version still reflects a "strong [Uniform *985 Landlord-Tenant Act] influence." Id. at 385 & n. 649, 17 P.3d 641.
The Uniform Landlord-Tenant Act abandoned the "conveyance" aspect of landlord/tenant law as unsuitable for modern times in favor of "an interdependent, or contract, view of lease covenants." Id. at 386, 17 P.3d 641 (citing Uniform Landlord-Tenant Act § 1.102 cmt.). The purpose of the Uniform Landlord-Tenant Act was twofold: "`simplify, clarify, modernize and revise'" landlord and tenant law, and to "`encourage landlords to maintain and improve the quality of housing.'"[11]Id. (quoting Uniform Landlord-Tenant Act § 1.102) (emphasis added).
Washington's Landlord-Tenant Act. The Landlord-Tenant Act requires the landlord to "keep the premises fit for human habitation" and to particularly maintain the premises in substantial compliance with health or safety codes for the benefit of the tenant. RCW 59.18.060(1). It requires the landlord to make repairs, except in the case of normal wear and tear, "necessary to put and keep the premises in as good condition as it by law or rental agreement should have been, at the commencement of the tenancy." RCW 59.18.060(5).
It lists the landlord's obligations. RCW 59.18.060. And it lists the tenant's remedies: (1) terminate the rental agreement; (2) "[b]ring an action in an appropriate court, or at arbitration if so agreed, for any remedy provided under this chapter or otherwise provided by law;" or (3) pursue the other remedies available under the Landlord-Tenant Act. RCW 59.18.090 (emphasis added).
Dexheimer. In Dexheimer, we rejected a tenant's claim for tort damages following breach of the Landlord-Tenant Act. We concluded that the tenant's remedies for the landlord's breach of RCW 59.18.060 were limited to only those remedies specifically set forth in our Landlord-Tenant Act. Dexheimer v. CDS, Inc., 104 Wash.App. 464, 471, 17 P.3d 641 (2001). Other jurisdictions allow a tenant's cause of action arising from statutory duties under its versions of the Uniform Landlord-Tenant Act.[12] And Washington commentators appear to agree.[13] We conclude that the Washington Residential Landlord-Tenant Act of 1973 provides a cause of action for the injury sustained here.
The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.
WE CONCUR: KATO, A.C.J., and KURTZ, J.
NOTES
[1] 104 Wash.App. 464, 17 P.3d 641 (2001).
[2] This amount is below the Environmental Protection Agency maximum contaminant level of 10 mg/L. Clerk's Papers (CP) at 180.
[3] The "Brita" filter is a brand of home water filtration system, which consists of a pitcher, a reservoir and a filter. Hazelhurst v. Brita Prods. Co., 295 A.D.2d 240, 241, 744 N.Y.S.2d 31 (2002). "The user of [this] filtration system pours tap water into the reservoir which gradually passes through the filter into the pitcher." Id.
[4] 65 Wash.2d 772, 399 P.2d 519 (1965).
[5] Paragraph 3 of the residential lease provides:

"Lessor covenants that on paying the rent and performing the covenants herein contained, Lessee shall peacefully and quietly have, hold, and enjoy the demised premises for the agreed term." CP at 126.
[6] Paragraph 13 of the residential lease provides in relevant part: "Major maintenance and repair of the leased premises, not due to Lessee's misuse, waste, or neglect or that of his employee, family, agent, or visitor, shall be the responsibility of Lessor or his assigns." CP at 127.
[7] See, e.g., Ruane v. Cardinal Realty, Inc., 116 N.H. 321, 322, 358 A.2d 412 (1976) (noting in action involving breach of contract for construction and sale of home, "the common expectation is that [a home] will be supplied with water in reasonable amounts and reasonable quality so as to make the house habitable"); McDonald v. Mianecki, 79 N.J. 275, 298, 398 A.2d 1283 (1979) (holding that "the implied warranty of habitability encompasses the potability of the water supply" in case of sale of home by a builder-vendor); Jeanguneat v. Jackie Hames Constr. Co., 576 P.2d 761, 765 (Okla.1978) (holding in case where well water was not drinkable, builder-vendor's implied warranty of habitability extends to a water well provided with a new home); Forbes v. Mercado, 283 Or. 291, 294, 583 P.2d 552 (1978) (finding where water had such a high iron content that it was not suitable for domestic purposes, the "seller impliedly warrants a dwelling with a usable water system because the dwelling is uninhabitable if the system is otherwise"); JRD Dev. Joint Venture v. Catlin, 116 Or.App. 182, 185, 840 P.2d 737 (1992) (refusing to set aside judgment on claim that tenant testified falsely where trial court found rental home uninhabitable due to contaminated drinking water and leaky septic system), modified, 118 Or.App. 502, 848 P.2d 136 (1993); Elderkin v. Gaster, 447 Pa. 118, 130, 288 A.2d 771 (1972) (holding in vendor-builder lawsuit where well water had high concentrations of organic nitrates and contained unacceptable levels of synthetic detergent, "[w]hile we can adopt no set standard for determining habitability, it goes without saying that a potable water supply is essential to any functional living unit; without drinkable water, the house cannot be used for the purpose intended").
[8] Leased premises are deemed "untenantable" for the purposes of constructive eviction under the quiet enjoyment covenant when "the premises are unfit for the purpose for which they are leased." 5 THOMPSON ON REAL PROPERTY § 40.22(c)(3)(i), at 144 (David A. Thomas ed., 1994). If the premises are "uninhabitable," they are certainly "untenantable."
[9] 106 Wash.App. 811, 822, 25 P.3d 467 (2001).
[10] 104 Wash.App. 464, 17 P.3d 641 (2001).
[11] Contra Dexheimer, 104 Wash.App. at 471, 17 P.3d 641 (observing that the Landlord-Tenant Act "represents a series of compromises between the interest of the modern-day landlord and the tenant").
[12] See, e.g., Newton v. Magill, 872 P.2d 1213, 1216-18 (Alaska 1994); Thomas v. Goudreault, 163 Ariz. 159, 166-67, 786 P.2d 1010 (Ct.App. 1989); Stoiber v. Honeychuck, 101 Cal.App.3d 903, 162 Cal.Rptr. 194 (1980); Thompson v. Crownover, 259 Ga. 126, 128-29, 381 S.E.2d 283 (1989); Bybee v. O'Hagen, 243 Ill.App.3d 49, 51-52, 183 Ill.Dec. 842, 612 N.E.2d 99 (1993); Hodge v. Nor-Cen, Inc., 527 N.E.2d 1157, 1160 (Ind.Ct.App.1988) (no residential landlord-tenant act but liability under common law if tenant is injured due to defective condition the landlord agreed to repair or negligently repaired; violation of building codes is negligence per se); Houston v. York, 755 So.2d 495 (Miss.Ct.App. 1999); Kunst v. Pass, 1998 MT 71, 288 Mont. 264, 957 P.2d 1; Shroades v. Rental Homes, Inc., 68 Ohio St.2d 20, 25, 427 N.E.2d 774 (1981) ("remedies provided in [Ohio's residential landlord-tenant act] are cumulative.... For example, the remedy of depositing rental payments with the clerk of court is grossly inadequate to compensate tenants for the types of injuries sustained in the present case"); Coulter Prop. Mgmt., Inc. v. James, 328 Or. 164, 970 P.2d 209 (1998); Nedrow v. Pruitt, 336 S.C. 668, 521 S.E.2d 755 (Ct.App.1999); Crawford v. Buckner, 839 S.W.2d 754 (Tenn.1992). Cf. Schuman v. Kobets, 760 N.E.2d 682 (Ind.Ct.App.2002) (addressing common law in states where the Uniform Landlord-Tenant Act was not adopted, and finding that no cause of action can be brought under an implied warranty of habitability).
[13] 2 WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK § 27.6(3) (3d ed.1996); William H. Clarke, Washington's Implied Warranty of Habitability: Reform or Illusion?, 14 GONZ. L.REV. 1, 22, 39, (1978); William B. Stoebuck, The Law Between Landlord and Tenant in Washington: Part I, 49 WASH. L.REV. 291, 364-65 (1974).