[No. 31137-2-II.   Division Two.   June 14, 2005.]

MICHELLE PRUITT ET AL., *Individually, as Parents, and as Natural Guardians, Appellants*, v. JAMES SAVAGE ET AL., *Respondents*.

*C. Joseph Sinnitt*, for appellants.

*Pamela A. Okano* (of *Reed McClure*); *Elizabeth A. Jensen*; and *Thomas J. Klusmeyer*, for respondents.

¶1 Morgan, A.C.J. — Michael Pruitt and his parents, Michelle and Mike Pruitt, sued Vincent and Denise Jackson, James Savage and his wife, and McMenamin's Real Estate Management Company for personal injuries that Michael suffered when hit by a falling garage door. The trial court granted a directed verdict, and we affirm.

¶2 Beginning in 1996, Vincent Jackson, Denise Jackson, and their son Kyle rented a single family home from Mr. and Mrs. Savage. The Savages' property manager was McMenamin's Real Estate Management Company.

¶3 In August 1998, teenager Michael Pruitt and his parents were living next door to the Jacksons. On August 18, Kyle and Michael were roller blading in the Jacksons' driveway and garage. The garage door was open, and Kyle and Michael repeatedly passed under it. After an hour or more, the garage door came down and hit Michael in the head. According to Michael and his parents, he suffered brain damage, the symptoms of which include migraine headaches and difficulty with schoolwork.

¶4 In August 1999, Michael sued the Jacksons, the Savages, and McMenamin's. The trial court denied summary judgment, and in October 2003, the case went to trial.

¶5 At trial, Vincent Jackson testified that on one occasion shortly after he and his family first moved into the home, his wife "threw the [garage] door up," it "bounced off the back," and "started to come back and close on her."[1] She caught it and was not harmed. Vincent reported the incident to McMenamin's, which found nothing wrong. The garage door did not come down on any other occasion, although it might bounce back if opened too hard.

¶6 Dennis Martin, a professional engineer retained by Michael, examined the door before trial. He concluded that the door generally would stay open "if . . . it [didn't] rebound off the back stop."[2] There was a point, however, at which "you could set the door when you'd get it up high enough, and the door would stay there momentarily. The counterbalancing springs would tend to help balance it right . . . at that point. And then the door would very slowly begin to creep towards the closing direction." Then, after thirty seconds to a minute, "it would just start going quite rapidly and slam down."[3] Martin determined that the rails on which the door moved were angled slightly toward the street instead of being level; that the problem could have been fixed by angling the rails slightly towards the back of the garage; and that if that had been done, the door would not have closed on Michael.

¶7 The defendants moved for a directed verdict at the end of the plaintiff's case. The court took the motion under advisement while the defense presented its case.

¶8 Kathleen Peterson, the owner of McMenamin's, testified that she examined the garage door after it fell on Michael. She found nothing wrong with it. James Savage testified that he had never had any problems with the

---

[1] Report of Proceedings (RP) (Oct. 8, 2003) at 6.

[2] 2 RP (Oct. 9, 2003) at 26.

[3] 2 RP (Oct. 9, 2003) at 9.

garage door and that McMenamin's was responsible for arranging repairs to the home.

¶9 The defendants again moved for a directed verdict at the end of their case. The trial court granted the motion and entered judgment for them.

¶10 On December 19, 2003, Michael voluntarily dismissed the Jacksons under CR 41(a)(2). Since then, the Jacksons have not been parties to this case.

¶11 Michael raises three questions on appeal. (1) Does *Restatement (Second) of Torts* § 343 (1965) apply? (2) Does an implied warranty of habitability apply? (3) Did McMenamin's owe and breach a duty of reasonable care because it examined the garage door in 1996?[4] In addressing these questions, we take the evidence in the light most favorable to Michael, because he was the nonmoving party below.[5] The evidence, however, is limited to that admitted at trial.[6] Hence, we do not consider pretrial depositions or declarations unless the certified record on appeal shows that they were admitted at trial.

I

¶12 Michael first claims that the trial court erred by declining to apply *Restatement (Second) of Torts* § 343 (1965). That section states:

> A *possessor of land* is subject to liability . . . if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they

---

[4] McMenamin's and the Savages assert that we should not reach these issues because the record on appeal initially included only 2 of the 13 witnesses who testified at trial. Michael later supplemented the record, so we proceed to the merits.

[5] *Stiley v. Block*, 130 Wn.2d 486, 504-05, 925 P.2d 194 (1996); *Westby v. Gorsuch*, 112 Wn. App. 558, 569, 50 P.3d 284 (2002), *review denied*, 149 Wn.2d 1008 (2003).

[6] *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 35 n.9, 864 P.2d 921 (1993); *Caulfield v. Kitsap County*, 108 Wn. App. 242, 249 n.1, 29 P.3d 738 (2001).

will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.[7]

¶13 By its terms, this section applies only to one who is a "possessor of land." As landlords, the Savages could enter only if the Jacksons gave permission. The same was true for their property manager, McMenamin's. The Jacksons, not the Savages or McMenamin's, were the possessors of the home in issue here.[8]

¶14 The parties debate whether, in this landlord-tenant context, section 343 applies only to common areas. The answer is typically yes, because by definition a landlord is not the "possessor" of noncommon areas.[9] Concluding that the liability of the Savages and McMenamin's is not affected by section 343, and noting the liability of the Jacksons (if any) is not before us, we hold that section 343 does not apply in this appeal.

## II

¶15 Michael argues that he can recover because the Savages breached an implied warranty of habitability. Although that warranty runs from landlord to tenant,[10] the parties do not cite, and we have not been able to find, a Washington case that extends it to persons not the tenant.[11]

---

[7] (Emphasis added.) *See also Iwai v. State*, 129 Wn.2d 84, 93, 915 P.2d 1089 (1996); RESTATEMENT (SECOND) OF TORTS § 328E (1965) (possessor of land is one "who is in occupation of the land with intent to control it").

[8] Compare *Sjogren v. Props. of the Pac. N.W.*, 118 Wn. App. 144, 75 P.3d 592 (2003). In that case, the plaintiff fell in a common area possessed by the defendant landlord.

[9] *See Sjogren*, 118 Wn. App. 144 (plaintiff fell in common area possessed by landlord); RESTATEMENT (SECOND) OF TORTS § 360 (1965) (under certain conditions, person who leases part of land and retains part of land may be liable for "dangerous condition upon that part of the land retained in the lessor's control").

[10] *Foisy v. Wyman*, 83 Wn.2d 22, 515 P.2d 160 (1973).

[11] *Tucker v. Hayford*, 118 Wn. App. 246, 75 P.3d 980 (2003) (tenant made ill by drinking contaminated water); *Lian v. Stalick*, 115 Wn. App. 590, 62 P.3d 933 (2003) (tenant injured by falling on stairs); *Dexheimer v. CDS, Inc.*, 104 Wn. App. 464, 17 P.3d 641 (2001) (tenant injured when struck by garage door); *Brown v. Hauge*, 105 Wn. App. 800, 21 P.3d 716 (2001) (tenant injured by tripping over

¶16 Michael relies on *Lian v. Stalick*,[12] but the plaintiff in that case was a tenant. Accordingly, Division Three was not asked to decide, and did not decide, whether the implied warranty of habitability should be extended to persons other than the tenant.

¶17 Michael relies on *Restatement (Second) of Property: Landlord & Tenant* § 17.6 (1977). It states:

> A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of: (1) an implied warranty of habitability; or (2) a duty created by statute or administrative regulation.

¶18 Although this section recommends extending the warranty to third persons other than the tenant, it has not been adopted in this state.[13] Neither party cites or discusses the authorities, if any, on which it is based. Neither party identifies or discusses any of the competing policy considerations that should be considered and addressed when deciding whether to extend the warranty of habitability to third persons other than the tenant. Given this paucity of briefing on what might be a significant question, we decline to address that question in this case.

### III

¶19 Michael argues that "Savage[s] and McMenamin's owed a duty of care to [him] because McMenamin's 'under-

---

threshold); *Wright v. Miller*, 93 Wn. App. 189, 963 P.2d 934 (1998) (tenant injured by falling down stairway), *review denied*, 138 Wn.2d 1017 (1999); *Aspon v. Loomis*, 62 Wn. App. 818, 816 P.2d 751 (1991) (tenant injured by falling against furnace), *review denied*, 118 Wn.2d 1015 (1992); *Howard v. Horn*, 61 Wn. App. 520, 810 P.2d 1387 (tenant injured by tripping on uneven sidewalk), *review denied*, 117 Wn.2d 1011 (1991).

[12] 115 Wn. App. 590, 62 P.3d 933 (2003).

[13] *Sjogren*, 118 Wn. App. at 151; *cf. Aspon*, 62 Wn. App. at 826 (in adopting chapter 59.18 RCW, "Legislature did not intend to impose a duty on landlords to keep noncommon areas safe from defects").

took' to repair the garage door" in 1996.[14] The Savages and McMenamin's counter that "the problem Mr. Jackson had asked McMenamin's to check was the door's closing immediately after it was flung open," and that "no one knew that it would close by itself hours after being open."[15]

¶20 "As a general rule, one who undertakes to act in a given situation has a duty to follow through with reasonable care, even though he or she had no duty to act in the first instance."[16] Although the evidence here is disputed, it shows, when viewed in the light most favorable to Michael, that McMenamin's undertook to act with respect to the door's "bounc[ing]" back immediately after the door was opened. The evidence does not show that McMenamin's undertook to act with respect to the door's falling at random times, or with respect to all of the door's possible defects. We conclude that the trial court did not err.

¶21 Any remaining arguments duplicate those already discussed, need not be reached, or lack merit.

¶22 Affirmed.

ARMSTRONG and HUNT, JJ., conur.

---

[14] Br. of Appellant at 13 (emphasis omitted).

[15] Br. of Resp't at 17.

[16] *Borden v. City of Olympia*, 113 Wn. App. 359, 369, 53 P.3d 1020 (2002), *review denied*, 149 Wn.2d 1021 (2003).