FILED
COURT OF APPEALS
DIVISION II

2014 JAN 14 AM 9: 27

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOHN JOHNSON and JANET JOHNSON, husband and wife, and the marital community thereof, | No. 43752-0-II |
| Appellants, | |
| v. | |
| TOBIN MILLER and CRYSTAL MILLER, husband and wife, and the marital community composed thereof, | UNPUBLISHED OPINION |
| Respondents. | |

QUINN-BRINTNALL, J.P.T.[1] — John Johnson appeals the summary judgment dismissal of his negligence action against Tobin and Crystal Miller.[2] Johnson contends that he is entitled to recover for injuries he received after slipping on the steps of a mobile home that the Millers were renting to his stepdaughter and her boyfriend. Because the Millers did not breach any duty owed to their tenants under the implied warranty of habitability or the Residential Landlord-Tenant Act of 1973 (RLTA), ch. 59.18 RCW, we decline to hold that Johnson, as the tenants' guest, may recover for his injuries and affirm the dismissal of his lawsuit.

---

[1] Judge Christine Quinn-Brintnall is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAR 21(c).

[2] Johnson's wife Janet is also a plaintiff, but we refer to Johnson in the singular for ease of reference.

FACTS

Taurus Baxter and his girlfriend, Athena Caldwell, rented a mobile home from Jackie Burns for approximately two years without entering into a written rental contract. When the Millers bought the property from Burns, they entered into a written rental agreement with Baxter on August 1, 2005. The agreement provided,

> Tenant will at all times maintain the Property . . . in a neat and clean condition and upon termination of this Agreement will leave the Property in as good condition as it is now, reasonable wear and tear excepted. Tenant agrees not to make any alterations or improvements in the Property without the Lessor's prior written approval.

Clerk's Papers at 36.

The front door to the mobile home opened onto an attached and partly-enclosed porch. A door on one side of the porch opened to three steps that led to the path to the driveway. This door had a window, but there was no landing leading from the door to the steps. There was a light inside the porch as well as an outside motion sensor light to illuminate the steps. Baxter and Caldwell turned off the outside light during bad weather because it operated erratically in the rain, and they let the light from inside the porch illuminate the area.

When Baxter and Caldwell first moved into the home, the steps had handrails on both sides. At some point after the Millers bought the home, Baxter removed both handrails because of their poor condition, intending to replace them himself. No one notified the Millers that the handrails had been removed, and the tenants never told the Millers about any problems with the motion sensor light or the steps. Caldwell said the Millers came by often but could not specifically remember them coming by the property after the handrails were removed.

Johnson visited the home several times without incident after Baxter removed the handrails. On a rainy evening in November 2006, Johnson stopped by again for a visit. When

he left, he was carrying a large bag. Caldwell and Baxter heard a thump, went outside, and saw Johnson on the ground. He said that he had slipped and went home.

Johnson sued the Millers in November 2009, alleging that their negligence in maintaining the steps had caused him personal injury. The complaint alleged that there was no landing on the mobile home porch and that the steps had no handrail and insufficient lighting. The Millers moved for summary judgment, which the trial court denied.

When the Millers moved for reconsideration, the trial court granted summary judgment on Johnson's common law claims as well as his RLTA, res ipsa loquitor, and agency claims, but it denied summary judgment on Johnson's claim that the Millers were vicariously liable for their tenants' acts on their behalf.

After additional discovery, the Millers moved for summary judgment on the vicarious liability claim. The trial court granted the motion, denied Johnson's motion for reconsideration, and entered a judgment for the Millers on all claims. Johnson now appeals the orders granting the Millers' motions for summary judgment and the order denying his motion for reconsideration.

## DISCUSSION

### STANDARD OF REVIEW

When reviewing a summary judgment order, we engage in the same inquiry as the trial court. *Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 377, 972 P.2d 475 (1999). Accordingly, our review is limited to the evidence and issues called to the trial court's attention; an argument neither pleaded nor argued to the trial court cannot be raised for the first time on appeal. *Silverhawk, LLC v. KeyBank Nat'l Ass'n*, 165 Wn. App. 258, 265, 268 P.3d 958 (2011). A summary judgment order can be granted only if the pleadings, affidavits, depositions, and

3

admissions on file show the absence of any genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Marshall*, 94 Wn. App. at 377. We must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 198, 943 P.2d 286 (1997).

We review an order denying a motion for reconsideration for abuse of discretion. *Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

In a negligence case, the plaintiff must prove duty, breach, causation, and damages. *Nivens*, 133 Wn.2d at 198. Whether an actionable duty was owed to a plaintiff is a threshold determination and a question of law that we review de novo. *Munich v. Skagit Emergency Commc'n Cent.*, 175 Wn.2d 871, 877, 288 P.3d 328 (2012). Johnson argues here that the Millers are liable for his injuries because they violated duties of care owed to him under the common law and the RLTA.

LANDLORD'S DUTY TO GUEST UNDER THE COMMON LAW

A.    GENERAL PRINCIPLES

Under the common law, a lessor owes no greater duty to guests of his tenant than he does to the tenant himself. *Frobig v. Gordon*, 124 Wn.2d 732, 735, 881 P.2d 226 (1994); *Regan v. City of Seattle*, 76 Wn.2d 501, 504, 458 P.2d 12 (1969). A landlord is liable for an affirmative act of negligence, as well as breach of an express covenant to repair. *Rossiter v. Moore*, 59 Wn.2d 722, 725, 370 P.2d 250 (1962); *Brown v. Hauge*, 105 Wn. App. 800, 804, 21 P.3d 716 (2001). A landlord has no duty to repair noncommon areas absent an express covenant to repair.

*Aspon v. Loomis*, 62 Wn. App. 818, 826, 816 P.2d 751 (1991), *review denied*, 118 Wn.2d 1015 (1992). And absent a repair covenant, a landlord is not liable to a tenant for injuries caused by apparent defects after exclusive control has passed to the tenant. *Sample v. Chapman*, 7 Wn. App. 129, 132, 497 P.2d 1334, *review denied*, 81 Wn.2d 1004 (1972).

A landlord is liable to a tenant, however, for damages caused by a concealed, dangerous condition known to the landlord that existed at the beginning of the leasehold. *Frobig*, 124 Wn.2d at 735. Although there is no duty to repair such a condition, the landlord must inform the tenant of known dangers that the tenant is not likely to discover. *Aspon*, 62 Wn. App. at 827. In addition, a landlord generally is not responsible for conditions that develop or are created by the tenant after possession has been transferred. *Frobig*, 124 Wn.2d at 736. These rules apply to tenants and guests alike. *Frobig*, 124 Wn.2d at 735-36.

Johnson does not contend that the Millers committed any affirmative act of negligence or violated any express covenant to repair. The porch and steps at issue in this case constitute noncommon areas, and the alleged defects at issue—the lack of a landing, railings, and adequate lighting—were patent rather than latent defects.[3] *See Schedler v. Wagner*, 37 Wn.2d 612, 615-16, 225 P.2d 213 (1950) (stairway to leased premises intended solely for tenant's exclusive use is not common area), *overruled on other grounds by Geise v. Lee*, 84 Wn.2d 866, 529 P.2d 1054 (1975). Furthermore, the tenants removed the railings and turned off the outside light after they took possession of the property. Under these facts and the common law rules set forth above, the Millers did not violate any duty of care. *See Sjogren v. Props. of Pac. Nw., LLC*, 118 Wn. App.

---

[3] Johnson also argues on appeal that the steps were rotten. He did not plead this defect, however, and it appears immaterial given his allegation that he fell down but not through the steps.

144, 148-49, 75 P.3d 592 (2003) (generally, landlord has no duty to protect tenant or guest from open and obvious dangers).

B.    VICARIOUS LIABILITY

Johnson argues, however, that the rental agreement required the tenants to keep the property in good condition and that the Millers are vicariously liable for Baxter's actions in attempting to repair the handrails because he was acting as their independent contractor. Johnson supports this argument by citing several *Restatement* provisions. *See* RESTATEMENT (SECOND) OF PROPERTY §19.1 (1977) (landlord who employs independent contractor to perform duty owed to tenant is liable to tenant and third persons for harm caused by contractor's failure to exercise reasonable care to make leased property reasonably safe); RESTATEMENT (SECOND) OF TORTS § 419 (1965) (same); RESTATEMENT (SECOND) OF TORTS § 424 (1965) (one who by statute or administrative regulation is under duty to provide specified safeguards for safety of others is subject to liability to others for whose protection the duty is imposed for harm caused by contractor's failure to provide such safeguards or precautions).

The Millers respond that at common law, an employer is not liable for the negligence of an independent contractor. *Afoa v. Port of Seattle*, 176 Wn.2d 460, 476, 296 P.3d 800 (2013). The Millers also point out that Johnson cites no case law to support application of these *Restatement* sections where the alleged independent contractor is a tenant; indeed, there are no Washington cases discussing or even citing sections 19.1 or 419. Section 19.1 presumes the existence of the duty to repair that is at issue in this case, and section 419 applies not under the common law but where a statute or lease agreement imposes such a duty. RESTATEMENT, § 19.1, cmt. a; RESTATEMENT, § 419 cmt. a. Section 424 applies where work is being done, but not to preexisting conditions. RESTATEMENT, § 424 cmt. a. We reject Johnson's claim of vicarious

liability based on Baxter's status as an independent contractor. Johnson made the related argument that Baxter was a subcontractor for whom the Millers were vicariously liable in seeking reconsideration of the order granting summary judgment, and we see no abuse of discretion in the court's denial of reconsideration on this ground.

C.     RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 17.6 (1977)

Johnson also urges us to adopt the exception to the common law rule barring landlord liability for open and obvious dangers set forth in *Restatement (Second) of Property: Landlord and Tenant* § 17.6 (1977). It states,

> A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:
> (1) an implied warranty of habitability; or
> (2) a duty created by statute or administrative regulation.

This rule applies even when the dangerous condition occurs in an area of the premises under the tenant's control so long as the defect constitutes a violation of either the implied warranty of habitability or a duty imposed by statute or regulation. *Lian v. Stalick*, 115 Wn. App. 590, 594, 62 P.3d 933 (2003) (*Lian* II). To establish liability under section 17.6, the tenant must show that (1) the condition was dangerous, (2) the landlord was aware of the condition and failed to exercise ordinary care to repair the condition, and (3) the existence of the condition was a violation of an implied warranty of habitability or a duty created by statute or regulation. *Lian* II, 115 Wn. App. at 595.

Division Three of this court has adopted section 17.6 to permit a tenant's recovery for personal injuries caused by violations of the RLTA: "The rule provides the tenant a remedy, supported by public policy, through which he or she may recover for injuries caused by the

landlord's breach of the RLTA." *Lian v. Stalick*, 106 Wn. App. 811, 822, 25 P.3d 467 (2001) (*Lian* I); *see also Tucker v. Hayford*, 118 Wn. App. 246, 256, 75 P.3d 980 (2003) (citing *Lian* I as recognizing cause of action in tort for violation of implied warranty of habitability under the RLTA). We recently applied section 17.6 and the rule articulated in *Lian* II to a case where a landlord declined to repair an inoperable window despite notification from his tenants. *Martini v. Post*, ___ Wn. App. ___, 313 P.3d 473, 483 (2013).

Although section 17.6 extends a landlord's tort liability for breach of an implied warranty of habitability or a statute/regulation to a tenant's guests, there are no Washington cases adopting it for this purpose. *See Pruitt v. Savage*, 128 Wn. App. 327, 332, 115 P.3d 1000 (2005) (declining to consider whether section 17.6 applies to guest because of paucity of briefing on issue); *Sjogren*, 118 Wn. App. at 151 (declining to apply section 17.6 to guest's personal injury claim because she had other remedies). *Martini*, which arose from the death of a tenant, did not discuss its applicability to guests. 313 P.3d at 482 n.6.

Here, we need not decide whether section 17.6 applies to injuries to a tenant's guests because even if section 17.6 does apply, the Millers did not breach any duty of care owed under either the implied warranty of habitability or the RLTA.

### 1. IMPLIED WARRANTY OF HABITABILITY

Under section 17.6, a landlord is subject to liability if he or she has failed to exercise reasonable care to repair a condition that violates an implied warranty of habitability. In applying this aspect of the section 17.6 test, we initially address whether an implied warranty of habitability exists independent of the RLTA.

In 1973, the Supreme Court declared that there is an implied warranty of habitability in all residential rental agreements. *Foisy v. Wyman*, 83 Wn.2d 22, 28, 515 P.2d 160 (1973). *Foisy*

arose out of an unlawful detainer action, and the court held that breach of an implied warranty of habitability was a defense to such an action. 83 Wn.2d at 28. The court reasoned that its result was reinforced by the recently enacted RLTA. *Foisy*, 83 Wn.2d at 28. Under the RLTA, the landlord has a duty during the leasehold to "keep the premises fit for human habitation" and to maintain certain specified items and areas. RCW 59.18.060.

Since *Foisy*, there has been some inconsistency over whether the implied warranty of habitability is an independent means of relief under the common law or whether it is available to a tenant solely under the RLTA. Cases seemingly confining the warranty to the RLTA include *Pinckney v. Smith*, 484 F. Supp. 2d 1177, 1181-82 (W.D. Wash. 2007) ("In Washington, the warranty of habitability has been legislatively codified in the RLTA."); *Tucker*, 118 Wn. App. at 256 (recognizing cause of action for implied warranty of habitability under RLTA); *Wright v. Miller*, 93 Wn. App. 189, 200, 963 P.2d 934 (1998) ("landlord may be liable to a tenant for injuries caused by a defect in the rental unit if there was a violation of the rental agreement, a violation of the common law duty of ordinary care, or if the defect was a violation of the implied warranty of habitability under the RLTA"), *review denied*, 138 Wn.2d 1017 (1999); and *Howard v. Horn*, 61 Wn. App. 520, 524, 810 P.2d 1387 (prior to adoption of RLTA, landlord's duty to tenant was governed by implied warranty of habitability; this warranty was codified in RLTA), *review denied*, 117 Wn.2d 1011 (1991).

Division One of this court recently concluded, however, that the implied warranty of habitability has not been superseded by statute. *Landis & Landis Constr., LLC v. Nation*, 171 Wn. App. 157, 163, 286 P.3d 979 (2012), *review denied*, 177 Wn.2d 1003 (2013). The court held that the implied warranty of habitability recognized in *Foisy* is available to a tenant as a basis for legal action against a landlord under the common law without regard to the RLTA.

*Landis*, 171 Wn. App. at 163; *see also Aspon*, 62 Wn. App. at 825 ("we cannot presume that the Legislature intended the [RLTA] to restrict application of the implied warranty of habitability").

We need not decide here whether the implied warranty of habitability provides a means of recovery independent of the RLTA. In applying section 17.6, courts look to statutory or regulatory duties and the implied warranty of habitability simply as standards for determining whether a landlord has failed to exercise reasonable care to repair a dangerous condition on the leased premises. *McIntyre ex rel. v. Philadelphia Housing Auth.*, 816 A.2d 1204, 1210-11 (Pa. Commw. Ct.) (citing RESTATEMENT § 17.6 cmt. a), *appeal denied*, 836 A.2d 123 (2003).

The appropriate standard of habitability is whether the violations present a substantial risk of future danger. *Landis*, 171 Wn. App. at 166. In *Foisy*, the warranty was breached by defects that included a lack of heat, no hot water tank, broken windows, a broken door, water running through the bedroom, an improperly seated and leaking toilet, a leaking sink, broken water pipes in the yard, and termites in the basement. 83 Wn.2d at 24-25. In *Landis*, the warranty was breached by an infestation of rodents. 171 Wn. App. at 166.

There is no evidence that the defects at issue here posed a *substantial* risk of danger. The four conditions Johnson alleges—no landing for the steps, no porch light, no handrails and slippery steps—at most represented relatively minor defects. This is demonstrated by the fact that the tenants and Johnson navigated the steps for several months without incident with those defects in place. Johnson argues that the defects constituted code violations, but there is no evidence that the attached porch was required to have a landing on the outside of the door at the time of its construction. And there was a light fixture in place that the tenants turned off as well

as railings that the tenants removed.[4]  The existence of these conditions did not create a substantial risk of danger sufficient to violate the implied warranty of habitability.  Accordingly, the Millers are not subject to liability under section 17.6 based on a breach of the implied warranty of habitability.

### 2.    LANDLORD'S DUTIES UNDER THE RLTA

Under section 17.6, a landlord also is subject to liability if he or she has failed to exercise reasonable care to repair a condition that violates a duty created by statute or administrative regulation.  Johnson argues that the Millers violated the RLTA, thereby triggering liability under section 17.6.

The RLTA does not create a generally actionable duty on the landlord's part to keep the premises "safe" or fit for human habitation.  Any defects that allegedly violate the RLTA's warranty of habitability must constitute violations of the landlord's specific duties as set forth in RCW 59.18.060.  *Lian I*, 106 Wn. App. at 816-18; *Aspon*, 62 Wn. App. at 825-26.

Johnson contends that the Millers violated their duties under former RCW 59.18.060(1) and (2) (2005), which required landlords to

> (1) [m]aintain the premises to substantially comply with any applicable code, statute, ordinance, or regulation governing their maintenance or operation, which the legislative body enacting the applicable code, statute, ordinance or regulation could enforce as to the premises rented if such condition substantially endangers or impairs the health or safety of the tenant;

---

[4] Building ordinances apply prospectively in the absence of language clearly indicating that they are intended to apply retroactively.  *Sorensen v. W. Hotels, Inc.*, 55 Wn.2d 625, 635, 349 P.2d 232 (1960).  As support for his code violation argument, Johnson cites current ordinances stating that manufactured homes must comply with the International Building Code (IBC) and specifying that additions that are not structurally attached shall comply with the IBC.  The porch at issue was attached to the mobile home, and Johnson does not show that the ordinances he cites were in effect at the time of that construction or that they were intended to apply retroactively.  Moreover, Johnson's expert stated that the porch and steps were added between 1983 and 1996, and the building code for 1985 did not appear to require a landing.

(2) Maintain the roofs, floors, walls, chimneys, fireplaces, foundations, and all other structural components in reasonably good repair so as to be usable and capable of resisting any and all normal forces and loads to which they may be subjected.

With regard to subsection (1), as noted above, there is no evidence of any code violations here. In addition, even if a code violation occurred, the four alleged defects at issue did not *substantially* endanger or impair the tenants' safety. With regard to subsection (2), even if the steps were structural components, they were not unusable. Of additional significance is the fact that RCW 59.18.060 concludes its discussion of landlord duties with the following provision:

No duty shall devolve upon the landlord to repair a defective condition under this section, nor shall any defense or remedy be available to the tenant under this chapter, where the defective condition complained of was caused by the conduct of such tenant.

As the Supreme Court noted in *Frobig*, this provision parallels the common law principle that a landlord is not responsible for conditions that develop or are created by a tenant after the property has been leased. 124 Wn.2d at 736; *see also Aspon*, 62 Wn. App. at 826 (review of RLTA supports inference that legislature did not intend to impose duty on landlords to keep noncommon areas safe from defects).

Here, the tenants and not the Millers turned off the outside light and removed the handrails. As a result, under RCW 59.18.060, the Millers cannot have any liability based on the RLTA for those conditions. And because these conditions did not arise from a violation of the RLTA, the Millers are not subject to liability for them under section 17.6

Accordingly, the Millers are not subject to liability under section 17.6 based on a violation. The Millers did not violate any duty of care owed under the RLTA. Johnson does not allege the violation of any other statute or regulation. Accordingly, the Millers are not subject to liability under section 17.6 based on a statutory or regulatory violation.

No. 43752-0-II

Given this result, we need not determine whether Johnson may recover for any violation of the implied warranty of habitability or the RLTA independent of section 17.6.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, P.J.

We concur:

PENOYAR, J.

MAXA, J.

13