FILED
COURT OF APPEALS
DIVISION II

2013 NOV 26 AM 9: 08

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| THOMAS MARTINI, individually and as the personal representative of the ESTATE OF JUDITH ABSON; DEBORAH SVANCARA; KIMBERLY SVANCARA, a minor; and CHRISTINA SVANCARA, a minor;<br><br>Appellants,<br><br>v.<br><br>PAUL POST, individually,<br><br>Respondent. | No. 43484-9-II<br><br><br><br><br><br><br><br>PUBLISHED OPINION |

PENOYAR, J. — Thomas Martini appeals the trial court's dismissal of his negligence action against his landlord Paul Post for his wife's, Judith Abson's, death after a fire in their rented house. Martini filed the negligence action against Post individually and on behalf of Abson and her three daughters. Before the fire, Martini had repeatedly asked Post to repair windows that were inoperable because they were painted shut. Abson died of smoke inhalation after the inoperable windows prevented her from escaping the fire. The trial court granted Post's motion for summary judgment on the issue of cause in fact and then denied Martini's motion for reconsideration.

Martini appeals, arguing that (1) summary judgment was improper because there are genuine issues of material fact regarding whether Post's failure to repair the windows was the cause in fact of Abson's death, and (2) the trial court erred when it denied his motion for reconsideration given the new evidence he submitted and the court accepted, demonstrating Abson attempted to open a window and expert testimony opining that Abson would have survived if she had been able to open a window. We reverse the trial court's denial of Martini's

motion for reconsideration because the new evidence creates a genuine issue of material fact regarding Abson's cause of death and remand for trial.

FACTS

I. BACKGROUND

Beginning in 2006, Abson and Martini leased a house from Post. During the initial walk through of the house, Martini noticed the windows in the northeast bedroom could not be opened and he requested that Post repair them. After his initial request, Martini requested that Post repair the windows in the northeast bedroom on at least two more occasions, but Post never repaired them.

In the early morning of February 27, 2007, a fire began in the home's basement. Two houseguests and Abson were awake and noticed the fire. One of the houseguests awoke Martini, who gathered the three children and ushered them outside. Both of the houseguests who initially discovered the fire also safely exited the house.

In the course of the fire, Abson, one of her daughters, and a third houseguest became trapped on the second floor. Abson was trapped in the back side of the house and was eventually found in the northeast bedroom, which was the room with inoperable windows. Martini heard Abson yelling from an upstairs bedroom in the back of the house before the fire fighters arrived at the house.

Abson's daughter and the houseguest were trapped in the southeast bedroom. While trapped, Abson's daughter heard Abson yell from the back of the second floor to get out of the house. Abson's daughter and the houseguest opened a window and took turns sticking their heads out of the window to breathe fresh air. When the fire fighters arrived, they immediately rescued Abson's daughter and the houseguest using a ground ladder.

Abson's daughter and the houseguest told the fire fighters that Abson was still in the house. Two fire fighters reentered the house through a second floor window. They found the door to the northeast bedroom ajar. The fire fighters opened the door and found Abson unconscious on the floor. Due to Abson's size and her condition, the fire fighters were unable to exit with Abson through a window via a ground ladder. After other fire fighters gained control of the first floor fire, the fire fighters exited with Abson using the house stairs and she was transported to the hospital. Resuscitation efforts were not successful and Abson was pronounced dead at the hospital. An autopsy showed Abson died from smoke inhalation.

After the fire, the City of Tacoma fire investigator noted the presence of hand prints and marks around the east window in the northeast bedroom, where Abson was trapped. In his complaint, Martini alleged there was evidence of hand prints around the window. In his motion for reconsideration, he provided a photograph that showed markings around the window.

A certified fire and explosion investigator, Noel Putannsuu, inspected the northeast room and found the window on the east wall to be inoperable. He stated that he (a 210 pound, 6 foot 2 inch tall man) could not open the window with reasonable or even forceful effort, and thus, Abson would have been unable to open the window while trapped in the northeast bedroom. The window along the north wall had been removed by the time he conducted his investigation.

II. PROCEDURAL HISTORY

Martini filed a negligence action against Post. Post moved for summary judgment, alleging that (1) Martini could not produce evidence that the window in the northeast bedroom was painted shut at the time of the fire; (2) because Martini and Abson were aware that the window was painted shut, Post could not be liable under Washington law; and (3) Martini failed to produce evidence that any negligence by Post was the proximate cause of Abson's death.

3

Martini responded, arguing that (1) Post is liable for Abson's death because he breached the Residential Landlord Tenant Act's (RLTA) implied warranty of habitability[1] and violated building requirements of the Tacoma Municipal Code;[2] and (2) because her daughter survived by opening a window, Abson also would have survived if the windows in the northeast bedroom had not been painted shut. Martini supported his response with Putannsuu's expert testimony. Putannsuu testified that Abson would have been unable to open the window and that Post "should have ensured that the window was open-able with minimal effort by an average person when the tenants moved in." Clerk's Paper's (CP) at 64.

The trial court granted summary judgment on the ground that Martini failed to prove the cause in fact element of proximate cause and stated Martini failed to present sufficient evidence to show that "'but for' the negligence of the defendants, [Abson] would not have died." CP at 165. Martini moved for reconsideration under CR 59(a)(7)-(9), arguing that Abson would have survived the fire but for Post's failure to repair the inoperable windows, and Post's failure was the legal cause of Abson's death. In his motion for reconsideration, Martini also introduced new evidence of hand prints around the window in the northeast bedroom and a declaration from Dr. Kiesel, who performed Abson's autopsy, testifying that Abson would have survived if she had been able to open a window and breathe fresh air.

Post filed a motion to strike the new evidence, arguing that (1) it is improper to introduce new evidence on reconsideration under CR 59(a)(7)-(9); (2) Dr. Kiesel was not qualified to testify regarding whether someone could survive in a burning house; and in the alternative, (3)

---

[1] RCW 59.18.060.

[2] Tacoma Municipal Code § 2.01.070.

4

Dr. Kiesel's opinion was based on speculation. Post also responded to Martini's motion for reconsideration, arguing that (1) the newly introduced evidence should not be considered, (2) the marks on the window in the northeast bedroom do not create a question of fact with regard to causation, and (3) Dr. Kiesel's declaration does not support Martini's motion for reconsideration.

During oral argument on the motion for reconsideration, Martini's attorney handed the court a photograph of the window in the northeast bedroom that showed evidence of a mark on the wall next to the window, which Martini contends is Abson's hand print. Post objected to the introduction of the photograph; however, the trial court allowed it. In a letter to counsel, the trial court noted that it reviewed the photograph of the window and Dr. Kiesel's declaration and stated that it was going to deny Martini's motion for reconsideration. However, in the actual order denying the motion for reconsideration, the trial court listed Dr. Kiesel's declaration as a document reviewed but not the photograph. Martini timely appeals.

## ANALYSIS

### I. PROXIMATE CAUSE

Martini argues that the trial court erred when it denied his motion to reconsider the summary judgment in Post's favor because the new evidence Martini submitted with his motion for reconsideration in addition to the evidence he previously submitted in opposition to Post's motion for summary judgment creates an issue of fact. Post responds that, even if all the evidence can properly be considered on appeal, the evidence is too speculative to support overturning the trial court's denial of reconsideration. We hold it was manifestly unreasonable to deny Martini's motion for reconsideration because the trial court had accepted evidence on reconsideration that created a genuine issue of material fact regarding the cause of Abson's death.

A.    Standard of Review

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We construe all facts and the reasonable inferences from those facts in the light most favorable to the nonmoving party. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). We review a trial court's denial of a motion for reconsideration and its decision to consider new or additional evidence presented with the motion to determine if the trial court's decision is manifestly unreasonable or based on untenable grounds. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 683, 15 P.3d 115 (2000); *Chen v. State*, 86 Wn. App. 183, 192, 937 P.2d 612 (1997).

The trial court granted Post's motion for summary judgment on the basis of the cause in fact element of proximate cause. Because we determine the trial court's denial of Martini's motion for reconsideration of the grant of summary judgment was improper considering the additional evidence presented, we need not review the trial court's initial granting of summary judgment.

B.     Additional Material Submitted with a Motion for Reconsideration

1.     Admission of Additional Materials

As an initial matter, we consider whether the trial court properly considered the additional evidence Martini submitted with his motion for reconsideration. Martini contends the trial court properly exercised its discretion in considering Dr. Kiesel's declaration and the hand print evidence when ruling on the motion for reconsideration under CR 59(a)(7)-(9). We agree with Martini that the trial court did not err when it considered additional evidence on reconsideration.

The decision to consider new or additional evidence presented with a motion for reconsideration is squarely within the trial court's discretion. *Chen*, 86 Wn. App. at 192. "'In the context of summary judgment, unlike in a trial, there is no prejudice if the court considers additional facts on reconsideration.'" *August v. U.S. Bancorp*, 146 Wn. App. 328, 347, 190 P.3d 86 (2008) (quoting *Chen*, 86 Wn. App. at 192). Generally, nothing in CR 59 prohibits the submission of new or additional materials on reconsideration.[3] *Chen*, 86 Wn. App. at 192.

The trial court properly exercised its discretion when reviewing the new evidence Martini presented on reconsideration. Post suffered no prejudice from trial court's consideration of the additional evidence because Post was previously aware of the evidence and of Martini's theory of Abson's cause of death. It was within the trial court's discretion to consider this additional evidence. Thus, we hold that the trial court's decision to review the new evidence was not manifestly unreasonable.

---

[3] There are a few limited exceptions that prohibit the introduction of new evidence on a motion for reconsideration, none of which are applicable to this case.

7

2.     Dr. Kiesel's Declaration

Post specifically contends that Dr. Kiesel's declaration should not be considered because "the opinion he expresses is beyond the scope of his expertise" and "is based on nothing more than speculation and conjecture." CP at 154-55. We disagree because the trial court properly exercised its discretion in considering this expert testimony, and we will not disturb that decision. *See Moore v. Hagge*, 158 Wn. App. 137, 155, 241 P.3d 787 (2010) (quoting *Miller v. Likins*, 109 Wn. App. 140, 147, 34 P.3d 835 (2001)) ("The trial court has wide discretion in ruling on the admissibility of expert testimony."); *Oliver v. Pac. Nw. Bell Tel. Co., Inc.*, 106 Wn.2d 675, 683, 724 P.2d 1003 (1986).

Dr. Kiesel qualified as an expert under ER 702 to offer an opinion regarding Abson's cause of death and whether she could have survived if she had access to fresh air. *See Philippides v. Bernard*, 151 Wn.2d 376, 393, 88 P.3d 939 (2004) (An expert's opinion is admissible if the witness is properly qualified, relies on generally accepted theories, and the expert's testimony is helpful to the trier of fact). Dr. Kiesel had worked in forensic pathology for 27 years and, in doing so, became familiar with performing detailed death scene investigations and determining the cause of death. He was also board certified, was a Diplomat of the American Board of Pathology in Anatomic and Forensic Pathology, and had been the Chief Medical Examiner for the Pierce County Medical Examiner's Office.

Dr. Kiesel also had an adequate factual basis for his expert opinion. *See Miller*, 109 Wn. App. at 148 ("[C]onclusory or speculative expert opinions lacking an adequate foundation will not be admitted.") (internal quotation marks omitted). He based his opinion that Abson would have survived if she had been able to open a window and access fresh air in large part on the facts that (1) two individuals trapped in the upstairs front bedroom were able to survive by

8

opening a window and breathing fresh air, and (2) Abson had no identified natural diseases that would have contributed to her death. Dr. Kiesel also performed an autopsy on Abson and read the City of Tacoma Fire Department's Fire Investigation Report in formulating his opinion. Dr. Kiesel had an adequate factual basis for his expert opinion and we hold that the trial court properly considered Dr. Kiesel's expert opinion.

C.      Ruling on Motion for Reconsideration.

Martini argues the trial court's denial of his motion for reconsideration was manifestly unreasonable considering all the evidence proffered, including the newly submitted evidence. We agree because, when viewed together and in the light most favorable to Martini, the evidence creates a genuine issue of material fact regarding the cause of Abson's death.

To maintain an action for negligence, the plaintiff must show (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the plaintiff suffered an injury, and (4) the defendant's breach was the proximate cause of the plaintiff's injury. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). The plaintiff must establish an issue of material fact as to each element of negligence to defeat summary judgment. *Craig v. Wash. Trust Bank*, 94 Wn. App. 820, 824, 976 P.2d 126 (1999).

Proximate cause has two elements: cause in fact and legal causation. *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). Here, the trial court decided summary judgment based on cause in fact. Cause in fact, or "but for" causation, refers to the "physical connection between an act and an injury." *Hartley*, 103 Wn.2d at 778. The plaintiff "must establish that the harm suffered would not have occurred but for an act or omission of the defendant." *Joyce v. Dept. of Corr.*, 155 Wn.2d 306, 322, 119 P.3d 825 (2005).

Cause in fact is usually a question for the trier of fact and is generally not susceptible to summary judgment. *Owen v. Burlington N. Santa Fe R.R. Co.*, 153 Wn.2d 780, 788, 108 P.3d 1220 (2005) (quoting *Ruff v. King County*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995)) ("'[I]ssues of negligence and proximate cause are generally not susceptible to summary judgment.'"); *Hertog*, 138 Wn.2d at 275. Cause in fact may be decided as a matter of law, however, if the facts and inferences from them are plain and not subject to reasonable doubt or difference of opinion. *Little v. Countrywood Homes, Inc.*, 132 Wn. App. 777, 780, 133 P.3d 944 (2006) (citing *Daugert v. Pappas*, 104 Wn.2d 254, 257, 704 P.2d 600 (1985)).

The plaintiff cannot rest a claim for liability on a speculative theory. *See Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 378-80, 972 P.2d 475 (1999). The plaintiff, however, need not prove cause in fact to an absolute certainty. *Gardner v. Seymour*, 27 Wn.2d 802, 808, 180 P.2d 564 (1947). It is sufficient if the plaintiff presents evidence that "allow[s] a reasonable person to conclude that the harm more probably than not happened in such a way that the moving party should be held liable." *Little*, 132 Wn. App. at 781 (citing *Gardner*, 27 Wn.2d at 808-09). The evidence presented may be circumstantial as long as it affords room for "reasonable minds to conclude that there is a greater probability that the conduct relied upon was the [cause in fact] of the injury than there is that it was not." *Hernandez v. W. Farmers Ass'n*, 76 Wn.2d 422, 426, 456 P.2d 1020 (1969).

In his response to Post's motion for summary judgment, Martini presented facts, evidence, or declarations demonstrating that (1) the windows in the northeast bedroom had been painted shut; (2) Martini requested that Post repair the windows in the northeast bedroom on several occasions, but Post failed to do so; (3) Martini and Abson's daughter heard Abson yelling from a back bedroom of the house; (4) Abson became trapped in the northeast bedroom during

10

the fire; (5) Abson died from smoke inhalation; and (6) two other residents who were trapped in the southeast bedroom were able to open a window and survived the fire. Martini, however, failed to allege any facts, either direct or circumstantial, in his summary judgment response that Abson attempted to open a window in the northeast bedroom or that if she had been able to open a window she would have survived.

In his motion for reconsideration Martini presented additional expert opinion evidence from Dr. Kiesel that Abson likely would have survived if she had been able to open a window in the northeast bedroom and evidence of possible hand prints around the window in the northeast bedroom. The City of Tacoma's investigation report also noted evidence of hand prints around the window in the northeast bedroom.

Post argues that Abson has not established "concrete" evidence of causation. Resp't's Br. at 14. But Post ignores the fact that at summary judgment Abson is entitled to all reasonable inferences drawn from the evidence. The trial court had discretion whether to consider the additional evidence Martini provided at reconsideration. *Chen*, 86 Wn. App. at 192. But after deciding to consider the additional evidence, the trial court should have construed all facts and all reasonable inferences from the facts in Martini's favor in determining whether a genuine issue of material fact existed. Considering all of the evidence presented to the trial court, it is reasonable to infer that Abson would have tried to gain access to fresh air through the windows once she was trapped. That she was conscious and able to try to save herself can be inferred from her shouting directions to the others trapped by the fire. And the limited evidence that she did try the windows is not fatal since she likely knew this was fruitless because they had been painted shut. When considering all the evidence, a reasonable person could conclude that Post's failure to repair the windows more probably than not was the cause in fact of Abson's death. *See Little*,

11

132 Wn. App at 781. Because genuine issues of material fact regarding the cause in fact of Abson's death remain to be resolved by the trier of fact, it was manifestly unreasonable for the trial court to deny Martini's motion for reconsideration.

## II. LANDLORD LIABILITY

Post argues, in the alternative, that he is not liable to Martini for damages under Washington law because Martini and Abson were aware of the inoperable windows in the northeast bedroom. Martini contends that Post is liable for Abson's death because he breached his duties under the RLTA and the implied warranty of habitability. In so arguing, Martini urges us to adopt the RESTATEMENT (SECOND) OF PROPERTY § 17.6 (1977). We apply the rule and reasoning from section 17.6 under these facts because Martini notified Post of the defective windows and gave him permission to enter the home to make the needed repairs.

Whether the defendant owed a duty to the plaintiff is a question of law. *Hertog*, 138 Wn.2d at 275. There are three distinct theories on which a tenant may base a claim for personal injuries: the landlord's breach of a duty under (1) the rental agreement,[4] (2) the common law, or (3) the RLTA. *Dexheimer v. CDS, Inc.*, 104 Wn. App. 464, 470, 17 P.3d 641 (2001).

### A. Common Law: Latent Defect Theory.

Post argues that he cannot be liable under the common law latent defect theory. Martini does not address this theory of liability in his brief. Generally, under common law a landlord has no duty to repair non-common areas absent an express covenant to repair. *Aspon v. Loomis*, 62 Wn. App. 818, 826, 816 P.2d 751 (1991). A landlord is subject to liability, however, for harm to the tenant caused by (1) latent or hidden defects in the leasehold, (2) that existed at the

---

[4] Neither Martini nor Post makes any argument about liability based on a rental agreement, and there is nothing in the record to support such an argument.

12

commencement of the leasehold, (3) of which the landlord had actual knowledge, and (4) of which the landlord failed to inform the tenant. *Frobig v. Gordon*, 124 Wn.2d 732, 735, 881 P.2d 226 (1994).

Here, Martini fails under element four. Martini and Abson were aware of the hidden defect: the windows in the northeast bedroom were inoperable. Thus, we find that Post cannot be held liable under the latent defect theory.

B. RLTA and the Implied Warranty of Habitability

Martini urges us to adopt the RESTATEMENT (SECOND) OF PROPERTY § 17.6 as Division Three of this court has done in *Lian v. Stalick*, 106 Wn. App. 811, 25 P.3d 467 (2001) (*Lian I*), which would allow him to assert a cause of action against Post for breaching the implied warranty of habitability and various provisions of the RLTA.[5]

Under the RESTATEMENT (SECOND) OF PROPERTY § 17.6, a landlord is subject to liability for physical harm to tenants and their guests caused by:

---

[5] In relevant part, the RLTA provides in RCW 59.18.060:

> The landlord will at all times during the tenancy keep the premises fit for human habitation, and shall in particular:
>
> (1) Maintain the premises to substantially comply with any applicable code, statute, ordinance, or regulation governing their maintenance or operation, which the legislative body enacting the applicable code, statute, ordinance or regulation could enforce as to the premises rented if such condition endangers or impairs the health or safety of the tenant;
>
> . . . .
>
> (5) Except where the condition is attributable to normal wear and tear, make repairs and arrangements necessary to put and keep the premises in as good condition as it by law or rental agreement should have been, at the commencement of the tenancy.

[A] dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of: (1) an implied warranty of habitability; or (2) a duty created by statute or administrative regulation.

Division Three adopted section 17.6 in *Lian I*. In *Lian I*, Susan White, formerly Susan Lian, sued her landlord for injuries after she fell on the decrepit stairs leading to her apartment, a non-common area of the apartment building. 106 Wn. App at 814. The court adopted section 17.6, which allows plaintiffs to recover for injuries caused by the landlord's breach of the implied warranty of habitability or his duties under the RLTA. *Lian I*, 106 Wn. App. at 822. The court later held that:

[T]o prevail on a section 17.6 claim, the tenant must show: (1) that the condition was dangerous, (2) that the landlord was aware of the condition or had a reasonable opportunity to discover the condition and failed to exercise ordinary care to repair the condition, and (3) that the existence of the condition was a violation of an implied warranty of habitability or a duty created by statute or regulation.

*Lian v. Stalick*, 115 Wn. App. 590, 595, 62 P.3d 933 (2003) (*Lian II*).

We once declined to address adopting section 17.6 where the plaintiff (a non-tenant) alleged negligence against the landlord but failed to provide adequate support and policy considerations for adopting section 17.6 in the context of non-tenants. *Pruitt v. Savage*, 128 Wn. App 327, 332, 115 P.3d 1000 (2005). We also declined to adopt section 17.6 when the dangerous condition was located in a common area and the plaintiff (also a non-tenant) was able to pursue a claim under a different theory of landlord liability. *Sjogren v. Props. of the Pac. Nw., LLC*, 118 Wn. App. 144, 151, 75 P.3d 592 (2003).

In *Pruitt*, Michael Pruitt and his parents sued their neighbors Vincent and Denise Jackson, the Jacksons' landlords, and the real estate management company for injuries Michael (a non-tenant) suffered after the garage door of the Jacksons' rental home fell on his head. 128

14

Wn. App. at 328. The Pruitts argued they could recover under section 17.6 for the landlords' breach of an implied warranty of habitability, relying on *Lian II*. *Pruitt*, 128 Wn. App. at 331-32. We declined to address the question of adopting section 17.6 because the Pruitts offered no precedent or policy discussion supporting extending section 17.6 to non-tenants. *Pruitt*, 128 Wn. App. at 332.

In *Sjogren*, Yvonne Sjogren (a non-tenant) fell down a darkened stairway of an apartment complex when visiting her daughter. *Sjogren*, 118 Wn. App. at 147. Sjogren brought a negligence claim against the apartment owner and, on appeal, urged us to adopt section 17.6, relying on *Lian I*. *Sjogren*, 118 Wn. App. at 147, 151. We declined to do so for several reasons. *Sjogren*, 118. Wn. App. at 151. First, we noted that the dangerous condition in *Lian I* was not in a common area, whereas, in *Sjogren*, the stairway was in a common area. *Sjogren*, 118 Wn. App. at 151. Thus, in *Lian I*, the landlord's common law duty to maintain common areas in a reasonably safe condition did not apply, whereas it did in *Sjogren*. *Sjogren*, 118 Wn. App. at 151. Second, *Sjogren* fit within the limited circumstances of RESTATEMENT (SECOND) OF TORTS § 343A (1965), in which an obvious danger does not automatically bar recovery, and we found that a question of fact remained regarding whether the stairs were an obvious dangerous condition. *Sjogren*, 118 Wn. App. at 151. Thus, because Sjorgen had the opportunity to pursue a claim under a different theory of landlord liability, we did not adopt section 17.6. *See Sjogren*, 118 Wn. App. at 151.

The instant case is distinguishable from *Pruitt* and *Sjogren*. First, Martini has no other theory of landlord liability under which to assert his negligence claim against Post as the plaintiff in *Sjogren* had with RESTATEMENT (SECOND) OF TORTS § 343A. Second, Martini, Abson, and Abson's children were all tenants of the home, whereas the plaintiffs in both *Pruitt* and *Sjogren*

15

were guests of the tenant. Thus the plaintiffs here, as tenants, have a direct legal relationship with their landlord.[6]

Here, like the plaintiff in *Lian I* who notified her landlord of the decrepit stairs, Martini notified Post of the defective windows in the northeast bedroom on several occasions and gave Post permission to enter the home to repair them. Yet, Post never made the requested repairs. Additionally, and unlike the plaintiff in *Pruitt* who failed to cite Washington authority for applying section 17.6 to non-tenants, Martini offered persuasive Washington authority that section 17.6 should apply to injuries suffered by a tenant due to a landlord's breach of the implied warranty of habitability or a breach of a duty specified by statute or regulation. *See Lian I*, 106 Wn. App. 811. Martini also argued that Post breached his duties under RCW 59.18.060(1), (5) and Tacoma Municipal Code section 2.01.070.[7] He contended that when a tenant alerts a landlord to a defective condition, the landlord has a duty to remedy the condition as required by the implied warranty of habitability and by his statutory duties. Policy

---

[6] While the language of section 17.6 extends its coverage to guests, at this time we are applying the rule and reasoning from section 17.6 only to tenants.

[7] In relevant part, Tacoma Municipal Code § 2.01.070 provides:

> No owner shall maintain, or permit to be maintained, any property which does not comply with the requirements of this chapter. All property shall be maintained to the Building Code requirements in effect at the time of construction. Alterations or repairs shall meet the minimum standards in this section.
>
> . . . .
>
> Windows and glazing shall be in good condition and maintain a weather barrier against the elements. All glazing shall be uncracked and unbroken. *Operable windows shall be able to operate in the manner in which they were designed, and shall not be painted closed or otherwise bind in a manner rendering them inoperable.*

(Emphasis added.).

16

considerations also support application of section 17.6 to the landlord-tenant relationship. As Martini argues, the rule in section 17.6 is based on the assumption that a duty created by a statute or regulation "represents a legislative determination of the standard of conduct required of the landlord" and that tort liability of the landlord for breaching his duty "tends to increase the likelihood that the will of the legislature as expressed in the statute or regulation will be effectuated." RESTATEMENT (SECOND) OF PROPERTY § 17.6 cmt. a (1977).

Thus, as tenants who notified Post of the defective condition and gave him permission to enter the home to make repairs, Martini, Abson, and Abson's children are entitled to bring a claim under the rule from section 17.6 and the test articulated in *Lian II.* Accordingly, we reverse the trial court's summary judgment and remand for further proceedings.

Penoyar, J.

We concur:

Johanson, A.C.J.

Bjorgen, J.