# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOHN NEICE,<br><br>        Appellant,<br><br>v.<br><br>PIERCE COUNTY RECYCLING, COMPOSTING AND DISPOSAL LLC DBA LRI, a for profit Washington LLC doing business in Pierce County; and STEARNS, CONRAD AND SCHMIDT, CONSULTING ENGINEERS INC., DBA SCS ENGINEERS, a for profit foreign environmental and general contractor,<br><br>        Respondents. | No. 58519-7-II<br><br><br><br>PUBLISHED OPINION |

GLASGOW, J.—Pierce County Recycling, Composting and Disposal LLC, d/b/a LRI, a landfill operator, hired Scarcella Brothers Inc. as a general contractor to build a waste disposal cell and to make repairs to control liquid leaching from the landfill. LRI also hired Stearns, Conrad and Schmidt Consulting Engineers Inc., d/b/a SCS Engineers to provide engineering services. LRI entered into separate contracts with both Scarsella and SCS Engineers.

John Neice, a Scarsella employee, was working as a surveyor when he breathed in landfill gas from an excavation, allegedly causing serious injury to his lungs. Scarcella was presumably immune from suit as Neice's employer under Washington's Industrial Insurance Act, Title 51 RCW. Neice sued LRI and SCS Engineers, claiming that the negligence of both companies caused his injury. Each defendant moved for summary judgment, arguing that Scarcella was entirely

responsible for Neice's safety. SCS Engineers also argued that it was entitled to immunity under RCW 51.24.035, a statute that immunizes design professionals from suit under certain circumstances. The trial court granted both defendants' motions.

We reverse the trial court's grant of summary judgment as to Neice's premises liability claim because Neice was a business invitee, and there is a genuine issue of material fact as to whether LRI breached its duty to him as a business invitee. But we affirm the dismissal of Neice's other claims against LRI because Neice failed to present a genuine issue of material fact as to whether LRI retained the ability to supervise the manner in which Scarsella employees, like Neice, did their work.

We also hold that SCS Engineers is entitled to immunity under RCW 51.24.035 because the relevant work occurred on a construction site, SCS Engineers did not assume responsibility for Scarcella employees' safety by contract, and SCS Engineers did not exercise control over the premises where the work was performed. Thus, the trial court properly dismissed Neice's claims against SCS Engineers.

## FACTS

### I. BACKGROUND

A.     The Project

LRI operates a landfill in Graham, Washington. In 2020, the company needed a new waste disposal cell. LRI moved the soil excavated from the waste disposal cell construction site to the west slope of the landfill, where it was also making repairs to prevent liquid from leaching. The repairs were necessary to keep leachate, or "garbage water," from seeping through the soil,

potentially preventing further construction or contaminating the groundwater. Clerk's Papers (CP) at 54.

LRI contracted with Scarsella Brothers as a general contractor to build the cell and perform the repairs. LRI also contracted with SCS Engineers as a consultant to design the cell, to provide field engineering for remediation of leaching sites, and to provide construction quality assurance services.

LRI's contract with Scarcella provided that, as general contractor, Scarsella was "solely responsible for the means, methods, techniques, sequences[,] and procedures of construction." CP at 114. Scarsella was responsible for providing all necessary equipment. Scarsella was also "responsible for initiating, maintaining[,] and supervising all safety precautions and programs." CP at 117. Scarsella agreed to "take all necessary precautions for the safety of . . . all persons on the site," and it agreed to "provide the necessary protection to prevent damage, injury[,] or loss to[] all persons on the site." *Id.* It was "solely responsible for the safety of its employees, subcontractors, agents, representatives, and invitees." *Id.* LRI and SCS Engineers were expressly not responsible for Scarsella's "means, methods, techniques, sequences[,] or procedures of construction, or the safety precautions and programs incident thereto." CP at 120.

All of the work done by SCS Engineers at the landfill was covered by a single contract. The agreement between consultant SCS Engineers, and LRI[1] provided that SCS Engineers would be responsible for its own activities and those of its employees and subcontractors. SCS Engineers would not "direct, supervise[,] or control the work of [LRI's] consultants and contractors or their

---

[1] SCS Engineers' contract was with Waste Connections and its subsidiaries, presumably including LRI. The specific relationship between Waste Connections and LRI does not appear in our record, but no party disputes that LRI is bound by this agreement.

subcontractors." CP at 89. And SCS Engineers expressly would not "advise on, issue directions regarding, or assume control over safety conditions and programs for others at the [jobsite]." *Id.* The contract further provided that "[n]either the professional activities of" SCS Engineers, nor the presence of its employees, would "be construed to imply that [SCS Engineers] control[led] the operations of others or [had] any responsibility for jobsite safety." CP at 89-90.

SCS Engineers' postconstruction report provided additional details about its responsibilities in the cell construction project. According to the report, SCS Engineers prepared technical specifications, construction drawings, and construction quality assurance guidelines. SCS Engineers kept daily records of construction progress—including information about tests related to Scarsella's work, "[a]reas of non-conformance[,] and required corrective actions." CP at 202. It also prepared field reports "to summarize ongoing construction activities and discussions with [Scarsella]." *Id.*

There was no contract between SCS Engineers and Scarsella. Although Scarcella, Neice's employer, acted as a general contractor, SCS Engineers' contract was with LRI; SCS Engineers was not a subcontractor of Scarsella and Scarsella was not a subcontractor of SCS Engineers.

LRI's contractor orientation briefing listed "potentially deadly [landfill gas]" as a workplace hazard, but its section on *required* personal protective equipment and safe work practices did not mention gas monitors. CP at 149. The agreement between LRI and SCS Engineers listed the cost of using certain equipment, including rates for a hydrogen sulfide meter and various gas analyzers. Scarsella did not require its employees to wear gas monitors at the landfill.

B.      Neice's Injury

Neice was a Scarsella surveyor who worked on the cell construction project. In addition to other work, he helped repair leachate seeps that SCS Engineers identified.

One morning, Neice worked on an excavation on the west slope of the landfill that had been emitting an especially strong smell. He was determining whether the excavation was deep enough when "gas shot up and got [him]." CP at 15. He fell to his knees and vomited. His daughter later picked him up and drove him to the hospital. The complaint alleges that he suffered serious injuries to his lungs.

A different Scarsella employee was also near the excavation when the gas shot up. A Scarsella superintendent quickly moved that employee away from the area because an LRI employee's gas monitor was going off. But the Scarsella employees, including Neice, were not wearing gas monitors.

## II. LAWSUIT

It appears from our record that Neice obtained workers' compensation benefits as a result of his on-the-job injury. *See* CP at 481-85. Neice's employer, Scarsella, was presumably immune from suit under the Industrial Insurance Act.

Neice sued LRI and SCS Engineers, who were not his employers, claiming that the companies negligently caused his injury. He identified both entities as general contractors and claimed that their negligence was based on breaches of the general contractor's common law duty to provide a safe workplace, as well as breaches of the general contractor's duty to comply with the Washington Industrial Safety and Health Act of 1973 (WISHA), ch. 49.17 RCW. He also

claimed that both parties breached a landowner's duty to business invitees and were thus liable under a theory of premises liability.[2]

The defendants separately moved for summary judgment. Each argued that Scarsella was solely responsible for Neice's safety. SCS Engineers also argued that it was entitled to immunity under RCW 51.24.035, a statute that immunizes design professionals from suit under certain circumstances.

The parties presented evidence on the roles LRI, SCS Engineers, and Scarsella played in the cell construction project. Neice testified that, as a Scarsella surveyor, he primarily worked on building the new cell. Though work on the west slope was part of the contract between LRI and SCS Engineers, Neice noted that the leachate seep repairs on the west slope were "not [his] regular work." CP at 293. SCS Engineers and LRI asked Neice to perform the repairs because they were worried that leachate would get into the groundwater. LRI also asked Neice to keep track of the "time and material" used for the leachate repairs because they were "extra" work that would be billed separately. CP at 294.

When deposed, Scarsella's superintendent, who supervised Neice, testified that SCS Engineers did not direct his leachate repair work. He said that when repairing instances of leaching, the "minimum, bare requirement [was] to make the leachate go down instead of out," implying that an engineer's supervision was not necessary for this task. CP at 47.

A different Scarsella employee testified that for all projects done on the landfill, SCS Engineers inspected Scarsella's work to ensure compliance with project specifications but did not

---

[2] In his complaint, Neice also included references to strict liability and res ipsa loquitur. However, on appeal, Neice does not address these concepts in his assignments of error.

take on a supervisory role. However, Neice testified that he generally got instructions for daily work from both his Scarcella superintendent and SCS Engineers. He said that an SCS Engineers employee instructed him to survey specific excavations, measure the amount of material being excavated, and measure the amount of material put back in. And he said that on the morning of his injury, an SCS Engineers employee gave him specific directions for surveying an area for repair.

But SCS Engineers' project director testified that he did not believe any SCS Engineers employees were onsite when Neice was injured. Additionally, an SCS Engineers report from that day notes that the company's staff arrived at the landfill more than an hour after the injury. And while Neice testified that SCS Engineers directed what surveying was necessary and what information had to be collected, he did not say that SCS Engineers governed how he had to conduct his measurements or what safety precautions he was required to take.

Neice testified that no one from LRI or SCS Engineers told him landfill gas was harmful. When asked if he ever requested that either company monitor the gas, Neice replied, "I didn't even know there was deadly gases out there. How could I ask them to monitor something I don't know?" CP at 304.

A professional engineer who served as Neice's expert witness, declared that exposure to landfill gas "is known to result in adverse health effects," including lung damage, unconsciousness, and death. CP at 449. He stated that LRI and SCS Engineers understood the risks landfill gas presented but failed to communicate the danger to Scarsella or its employees. He declared that the "risk of exposure to landfill gas can be reasonably mitigated" by gas monitors, describing them as a "prudent administrative control . . . utilized by industry to warn users of the hazards of the atmosphere that they are working in." CP at 452. And he concluded that but for LRI's failure to

7

require Scarsella employees to wear gas monitors, "it is more likely than not that Neice would not have suffered an inhalation exposure and injury from the landfill gas." *Id.* He also stated that SCS Engineers knew of the hazard and failed to take steps to protect all employees working at the landfill from the hazard of landfill gas. The expert made statements about LRI's and SCS Engineers' duties to Neice as an employee of Scarcella, but the expert's discussion of duty is based on federal law regulated by the United States Occupational Safety and Health Administration, which was not a basis for Neice's claims in his complaint.

The trial court granted both defendants' motions for summary judgment. Neice appeals.

ANALYSIS

We review a trial court's dismissal on summary judgment de novo. *Mackey v. Home Depot USA, Inc.*, 12 Wn. App. 2d 557, 569, 459 P.3d 371 (2020). "Summary judgment is appropriate only where, after viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." *Dotson v. Pierce County*, 13 Wn. App. 2d 455, 468, 464 P.3d 563 (2020). A genuine issue of material fact exists where "reasonable minds could disagree on the facts controlling the outcome of the case." *Mackey*, 12 Wn. App. 2d at 569.

"When determining whether an issue of material fact exists," we "must construe all facts and inferences in favor of the nonmoving party." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). On summary judgment, a nonmoving party's testimony "must be taken as true and can create a genuine issue of material fact even if it is 'self-serving.'" *Mackey*, 12 Wn. App. 2d at 575 (quoting *Reagan v. Newton*, 7 Wn. App. 2d 781, 806, 436 P.3d 411 (2019)). But affidavits containing conclusory statements without any factual support are not sufficient to

defeat summary judgment. *Farias v. Port Blakely Co.*, 22 Wn. App. 2d 467, 493, 512 P.3d 574 (2022).

## I. CLAIMS AGAINST LRI

To establish negligence, a plaintiff must prove the defendant had a duty to them, the defendant breached that duty, and the breach proximately caused their injury. *Perillo v. Island County*, 15 Wn. App. 2d 618, 626, 476 P.3d 606 (2020). "Summary judgment is proper if a plaintiff cannot meet any one of these elements" as a matter of law. *Id.* In general, questions of duty tend to be questions of law, while breach and proximate cause tend to involve questions of fact, but the court may still resolve breach and proximate cause as a matter of law "if reasonable minds could not differ." *Crisostomo Vargas v. Inland Wash.*, 194 Wn.2d 720, 730, 452 P.3d 1205 (2019) (quoting *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999)).

A.     Premises Liability

1.      Duty and breach

Neice argues LRI is liable for his injury under a theory of premises liability. LRI responds that summary judgment on this claim was proper because Neice was not a business invitee. It adds that it cannot be liable under a theory of premises liability because it retained no control over Neice's work or the area where he was working. We disagree with LRI.

"The employees of an independent contractor hired by the landowner are [business] invitees." *Payne v. Weyerhaeuser Co.*, 30 Wn. App. 2d 696, 718, 546 P.3d 485 (2024). Section 343 of the *Restatement (Second) of Torts* describes a landowner's liability to business invitees:

> A possessor of land is subject to liability for physical harm caused to his invitees
> by a condition on the land if, but only if, he

9

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343 (AM. L. INST. 1965).

Here, Neice was LRI's business invitee because he was the employee of an independent contractor that LRI hired. *Afoa v. Port of Seattle*, 176 Wn.2d 460, 467-68, 296 P.3d 800 (2013) (*Afoa* I).[3] Considering the evidence in the light most favorable to Neice, the record contains support for the proposition that LRI knew or, by the exercise of reasonable care, would have discovered the possibility of Neice becoming injured by landfill gas. The professional engineer who served as Neice's expert witness declared that exposure to landfill gas "is known to result in adverse health effects." CP at 449. Additionally, LRI's orientation briefing lists the presence of potentially deadly gas as a hazard associated with activities on the landfill. Thus, there is evidence in the record that LRI knew the health risks landfill gas posed to its contractors.

There is also a question of fact about whether LRI should have expected that Neice would not realize the danger or fail to protect himself against the danger. Scarsella admitted that it did

---

[3] We reject Neice's argument that the outcome of his premises liability argument is controlled by *Afoa* I. We agree that *Afoa* I establishes that workers on the premises are business invitees regardless of who their employers are, but that is the extent of the case's helpfulness for this claim. In *Afoa* I, the Washington Supreme Court held that the Port owed Afoa "a duty to prevent 'harm caused by an open and obvious danger' if it 'should have anticipated the harm, despite the open and obvious nature of the danger.'" 176 Wn.2d at 469 (quoting *Kamla v. Space Needle Corp.*, 147 Wn.2d 114, 126, 52 P.3d 472 (2002)). Here, Neice specifically argues that the danger was *not* open or obvious. And LRI does not argue that the danger *was* open and obvious. Therefore, *Afoa* I is not otherwise helpful as Neice asserts.

not require its employees to wear gas monitors when they worked at the landfill. The record shows that LRI and Scarsella worked closely together, so it is hard to imagine that LRI was unaware that its general contractor's employees were working without gas monitors. *See* CP at 153 ("Coordinate all tasks with LRI personnel"; "Do NOT enter a confined space without proper authorization from LRI."). Construing the record in Neice's favor, it suggests that LRI was aware that Scarcella employees were not protecting themselves from hazardous landfill gas.

Finally, there is a question of fact about whether LRI failed to exercise reasonable care to protect Neice from the danger. Neice's expert witness declared that the "risk of exposure to landfill gas can be reasonably mitigated" by gas monitors, which are a "prudent administrative control . . . utilized by industry to warn users of the hazards of the atmosphere that they are working in." CP at 452. But LRI's orientation briefing shows that it did not require contractors to wear gas monitors, despite requiring them to wear other personal protective equipment like hard hats and safety glasses. And the record shows that at least some LRI employees had access to gas monitors.

We note that in *Eylander v. Prologis Targeted U.S. Logistics Fund, LP*, the Washington Supreme Court held that a landowner "may satisfy its duty to guard the invitee against *known or obvious dangers* on the premises by delegating the duty of protection to an independent contractor." 2 Wn.3d 401, 415, 539 P.3d 376 (2023) (emphasis added). We recently reiterated this holding in *Payne*, 30 Wn. App. 2d at 720-21. But Neice specifically argues that the danger was *not* known or obvious, and LRI does not argue that the danger *was* known or obvious. Nor does LRI explicitly argue that the reasoning in *Eylander* regarding delegation of a duty to protect independent contractors against obvious dangers should extend to nonobvious dangers.

11

Moreover, Neice repeatedly testified in a deposition that he was never told landfill gas could be dangerous. Although this testimony is self-serving, we must take it as true at the summary judgment stage. *Mackey*, 12 Wn. App. 2d at 575. And based on testimony from Neice's superintendent, shortly before the injury, the excavation where the injury occurred smelled especially bad. The fact that Scarsella employees continued working there suggests that Neice was not the only employee who did not understand the danger. Although LRI's orientation briefing lists landfill gas as a potential hazard, we "must construe all facts and inferences in favor of the nonmoving party," so we have to assume at this stage that Neice was not properly briefed about gas monitors as a safety precaution. *Ranger Ins. Co.*, 164 Wn.2d at 552.

There are genuine issues of material fact regarding whether LRI breached its duty to Neice, its business invitee.

### 2. Proximate cause

In its response, LRI argues that because gas escaped only when Scarsella began excavating, Neice cannot prove LRI's acts or omissions proximately caused his injury.

To prevail on a premises liability claim, a plaintiff must prove "'a proximate cause between the breach and the injury.'" *Johnson v. Liquor & Cannabis Bd.*, 197 Wn.2d 605, 611, 486 P.3d 125 (2021) (quoting *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994)). Proximate cause consists of cause in fact and legal cause. *Martini v. Post*, 178 Wn. App. 153, 164, 313 P.3d 473 (2013). "Cause in fact, or 'but for' causation, refers to the 'physical connection between an act and an injury.'" *Id.* (quoting *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985)). The plaintiff must show that the harm they suffered would not have occurred but for the defendant's act or omission. *Id.* "[L]egal cause is grounded in policy determinations as to

how far the consequences of a defendant's acts should extend." *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 289, 481 P.3d 1084 (2021).

"Causation is usually a jury question." *Mehlert v. Baseball of Seattle, Inc.*, 1 Wn. App. 2d 115, 119, 404 P.3d 97 (2017). "It becomes a question of law for the court only when the causal connection is so speculative and indirect that reasonable minds could not differ." *Id.*

Here, Neice's expert witness declared that but for LRI's failure to adequately warn or to require Scarsella employees to wear gas monitors, "it is more likely than not that Neice would not have suffered an inhalation exposure and injury from the landfill gas." CP at 452. Moreover, right after Neice got injured, Neice's superintendent said he got a different Scarsella employee "away from that area" because an LRI employee's gas monitor was going off. CP at 317. Viewing this evidence in the light most favorable to Neice, it indicates that if Neice had been wearing a gas monitor, its alert would have prompted him to get away from the area before the landfill gas injured him.

In light of the genuine issues of material fact regarding these elements of Neice's premises liability claim, we reverse summary judgment on this claim.

B.      Common Law Safe Workplace Doctrine

Neice argues LRI is also liable for his injury because it controlled the landfill and the way Neice carried out his work, so it was in the best position to ensure the working environment was safe under the safe workplace doctrine. We disagree.

The common law safe workplace doctrine imposes duties on both general contractors and jobsite owners. *Payne*, 30 Wn. App. 2d at 711. The general rule is that "'a general contractor owes a duty to all employees on a jobsite to provide a safe place to work in all areas under its

supervision.'" *Id.* (quoting *Crisostomo Vargas*, 194 Wn.2d at 730). But if a general contractor hires an independent contractor, it is not liable for injuries to the independent contractor's employees unless it retains control over those employees' work. *Id.* If the general contractor retains such control, it has "a common law duty within the scope of control to provide a safe workplace." *Id.* "Like general contractors, jobsite owners have a common law duty to the employees of independent contractors if they 'retain[] control over the manner in which work is done on a work site.'" *Id.* at 712 (quoting *Afoa* I, 176 Wn.2d at 478) (alteration in original).

Retention of control is "retention of the right to direct the manner in which the work is performed." *Kamla v. Space Needle Corp.*, 147 Wn.2d 114, 121, 52 P.3d 472 (2002). It is not enough for the employer to have "'merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports,'" or "'to prescribe alterations and deviations.'" *Id.* (quoting RESTATEMENT § 414 cmt. c). Rather, there must be "'such a retention of a right of supervision that the contractor is not entirely free to do the work in [its] own way.'" *Id.* (quoting RESTATEMENT § 414 cmt. c).

For example, in *Kamla*, the Space Needle Corporation hired a contractor to install a fireworks display. *Id.* at 118. Kamla, one of the contractor's employees, was working on the 200-foot level of the Space Needle when an elevator snagged his safety line and dragged him through the elevator shaft. *Id.* Kamla sued the Space Needle, alleging that it breached its common law duty to him, and the trial court granted summary judgment in the Space Needle's favor. *Id.* The Washington Supreme Court held that the Space Needle did not owe Kamla a common law duty of care, reasoning that the Space Needle did not retain the right to interfere with the way the contractor worked or "affirmatively assume responsibility for workers' safety." *Id.* at 121-22. The Space

Needle "simply agreed to provide [the contractor] a suitable display site and fallout zone, access to the display site to set up the display, adequate crowd control, firefighters, and permit fees." *Id.* at 122. But the Space Needle "did not retain control over the manner in which [the contractor] installed the fireworks display or completed its work." *Id.*

*Kinney v. Space Needle Corp.*, 121 Wn. App. 242, 85 P.3d 918 (2004), is a similar case with a different outcome. In that case, the injured employee of a contractor sued the Space Needle Corporation for negligence. *Id.* at 246. The trial court granted summary judgment in the corporation's favor. *Id.* Division One reversed, holding that there was "sufficient evidence to raise a material question of fact" regarding whether the corporation retained the right to direct the way Kinney performed her work. *Id.* at 248. Division One explained that the corporation supplied the contractor with safety equipment and did not "specifically rebut any of the declarations of its former employees expressly stating they actively supervised and actually controlled all safety activities of [the contractor's] employees." *Id.* at 247.

Here, Neice did not present evidence that LRI retained the right to direct the manner in which Scarsella employees carried out their work. LRI's contract with Scarsella provided that Scarsella was "solely responsible for the means, methods, techniques, sequences[,] and procedures of construction." CP at 114. It also provided that Scarsella was "responsible for initiating, maintaining[,] and supervising all safety precautions and programs." CP at 117.

More significantly, unlike in *Kinney*, no witness testified that LRI actively supervised their work or assumed responsibility for their safety. Neice's superintendent said LRI required Scarsella "to make the leachate go down instead of out," but this does not amount to testimony that LRI controlled the manner in which Scarsella employees achieved that goal. CP at 47.

Neice points to his expert's declaration as evidence that LRI "retained the right to direct the manner in which the work at the jobsite was performed." Appellant's Opening Br. at 19. But the expert merely declared that LRI had "general supervisory authority over the entire work site" and that it approved SCS Engineers' plan for the remediation of a leachate seep. CP at 452. An assertion of general control over the jobsite does not amount to retained control over the manner in which Scarsella employees like Neice performed their work on the site.

Neice also points to LRI's landfill permit. But the permit only discusses the conditions LRI must meet to continue operating a landfill. It contains no information about LRI's relationship with Scarsella and its employees.

While Neice compares this case to *Afoa* I, his reliance on that case is misplaced. In *Afoa* I, the injured employee of a ground handling services company sued the Port of Seattle, which "appear[ed] to exercise *nearly plenary control* over Sea-Tac Airport and *the manner in which work [was] performed* on the premises." *Afoa* I, 176 Wn.2d at 478 (emphasis added). On summary judgment, the trial court dismissed Afoa's negligence claim against the Port for failure to maintain a safe workplace. *Id.* at 465-66. The Washington Supreme Court reversed, reasoning that the Port "allegedly retained substantial control over the manner in which work [was] done at Sea-Tac Airport." *Id.* at 481. In contrast, Neice offered no evidence that LRI exercised a similar degree of control over the manner in which Scarsella employees worked.

Finally, Neice argues that the daily report he attached as an exhibit to his reply creates a genuine issue of material fact. "On review of an order granting or denying a motion for summary judgment," we "consider only evidence . . . called to the attention of the trial court." RAP 9.12. "'The purpose of this limitation is to effectuate the rule that the appellate court engages in the same

16

inquiry as the trial court.'" *Gartner, Inc. v. Dep't of Revenue*, 11 Wn. App. 2d 765, 777, 455 P.3d 1179 (2020) (internal quotation marks omitted) (quoting *Mithoug v. Apollo Radio of Spokane*, 128 Wn.2d 460, 462, 909 P.2d 291 (1996)). The report Neice included with his reply is not in our record and Neice does not establish that it was before the trial court when it considered LRI's motion for summary judgment. We therefore decline to consider it.

We hold that the trial court did not err in granting Pierce County's summary judgment motion on the issue of the company's liability under the safe workplace doctrine.

C.     WISHA

Neice argues that LRI had a duty under RCW 49.17.060(2) to comply with WISHA regulations and that it violated those regulations by failing to require Neice to wear a gas monitor.

RCW 49.17.060(2) provides that employers must "comply with the rules, regulations, and orders promulgated under" WISHA. Under this subsection, "general contractors have a duty to ensure compliance with WISHA regulations," and this duty "extends to all employees working at the jobsite regardless of whether the general contractor retains control over the jobsite." *Payne*, 30 Wn. App. 2d at 711-12. But "'jobsite owners have a duty to comply with WISHA only if they retain control over the manner in which contractors complete their work.'" *Id.* at 712 (quoting *Afoa I*, 176 Wn.2d at 472).

Here, for the same reasons explained above, Neice has failed to present a genuine issue of fact as to whether LRI retained control over the manner in which Scarsella employees completed their work. Thus, we hold that the trial court did not err when it granted summary judgment in LRI's favor on the issue of the company's liability for any WISHA violations.

17

II. CLAIMS AGAINST SCS ENGINEERS

A.      Immunity under RCW 51.24.035

RCW 51.24.035(1) provides that in general, an injured worker "may not seek damages against a design professional who is a third person and who has been retained to perform professional services on a construction project." But an injured worker may seek damages against a design professional if "the design professional actually exercised control over the portion of the premises where the worker was injured." RCW 51.24.035(1). Neice argues that the statute does not protect SCS Engineers because the landfill was not a construction site and because SCS Engineers exercised control over the portion of the landfill where Neice was injured. We disagree.

When we interpret a statute, our fundamental objective is to carry out the legislature's intent. *Spencer v. Franklin Hills Health-Spokane, LLC*, 3 Wn.3d 165, 170, 548 P.3d 193 (2024). If "'the statute's meaning is plain on its face,'" we "'give effect to that plain meaning as an expression of legislative intent.'" *Id.* (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

Additionally, because RCW 51.24.035 is part of the Industrial Insurance Act, we construe it liberally in favor of the worker. *See Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 598, 257 P.3d 532 (2011). And we strictly construe statutory "grants of immunity in derogation of the common law." *Id.* at 600.

1.      RCW 51.24.035

For purposes of immunity, RCW 51.24.035 defines a "design professional" in part as "an architect, professional engineer, land surveyor, or landscape architect, who is licensed or

authorized by law to practice such profession." RCW 51.24.035(3). Neice does not dispute that SCS Engineers is a design professional.

Title 51 RCW contains no definition of "construction project." *See* RCW 51.24.035; Chapter 51.08 RCW. But in *Michaels*, after the Supreme Court reviewed the dictionary definitions of "'construction,'" "'project,'" and "'site,'" it concluded that a construction project is "the overarching plan and process of . . . completing a building (or other structure)." 171 Wn.2d at 601.

In *Michaels*, the city hired an engineering firm both to retrofit a water treatment plant and, separately, to perform "'on call'" maintenance for plant facilities. *Id.* at 594 (quoting record). The Court held that the engineering firm was not entitled to immunity for injuries related to its maintenance work because the work did not occur on a construction site. *Id.* at 602-03. Though the engineering firm helped construct the water treatment plant on one part of the facility, there was no relationship between the "overarching plan and process" of this construction and the separate maintenance work. *Id.* at 601. The projects were several hundred feet apart and the maintenance work "would have been needed whether or not there was any construction occurring on the campus." *Id.* at 602.

There are three exceptions to RCW 51.24.035's grant of immunity to design professionals. An injured worker may seek damages against a design professional if "responsibility for safety practices [was] specifically assumed by contract," or if "the design professional actually exercised control over the portion of the premises where the worker was injured." RCW 51.24.035(1).

Additionally, an injured worker may seek damages against a design professional if they negligently prepared "design plans and specifications." RCW 51.24.035(2). SCS Engineers correctly notes that Neice has not alleged that this third exception applies.

19

2.      SCS Engineers' immunity

Although Neice argues otherwise, SCS Engineers did perform services on a construction site because the heavy equipment work on the west slope where Neice was injured was a construction project.

LRI hired SCS Engineers to help complete a structure, namely a "composite-lined waste disposal cell with leak detection and leachate collection systems." CP at 170. As part of this project, LRI and SCS Engineers transferred soil excavated from the new cell construction to existing cell sites on the west slope of the landfill using heavy equipment.

We acknowledge that the west slope is distant from the cell construction area. And Neice testified that the leachate seep repairs on the west slope were "extra" work that would be billed separately from his other work on the cell construction. CP at 294. Though they occurred at separate locations, the activities on the cell construction site and the west slope were interrelated parts of the same "overarching plan" that LRI hired SCS to perform. *Michaels*, 171 Wn.2d at 601. Unlike the engineering firm in *Michaels*, SCS Engineers was not under a general maintenance contract. SCS Engineers contracted to consult on a construction project for which LRI also hired Scarcella, a general manager whose role was to manage the construction.

As part of the construction process, LRI asked SCS Engineers to help move soil from the cell construction site to the west slope. The west slope was a necessary and preimagined location in the construction plan. So repairing leachate seeps on the west slope that could have posed a danger to workers or contaminated the groundwater at the landfill, even if it was separately billed work, was part of the overarching construction project and occurred on part of the construction

20

site. Under the specific facts of this case, SCS Engineers was performing services on a construction site when identifying and repairing leachate seeps on the west slope.

Additionally, SCS Engineers did not assume responsibility for Scarsella employees' safety practices through contract. There was no contract between SCS Engineers and Scarsella. The master service agreement between SCS Engineers and LRI provided that SCS Engineers would not "advise on, issue directions regarding, or assume control over safety conditions and programs for others at the [jobsite]." CP at 89. The project addendum addressing SCS Engineers' work on the landfill does not include any language about assuming responsibility for other contractors' safety practices. And the contract between Scarsella and LRI provided, "Neither [LRI] nor [SCS Engineers] shall be responsible for [Scarsella's] means, methods, techniques, sequences[,] or procedures of construction, or the safety precautions and programs incident thereto." CP at 120.

SCS Engineers also did not "actually exercise[] control over the portion of the premises" where Neice was injured. RCW 51.24.035(1).

Neice said that in general, he got instructions for daily work from both his superintendent and SCS Engineers. Neice also said that on the morning of the incident, SCS Engineers gave him specific directions for making the repair that led to the injury. Neice testified that SCS Engineers told him, a surveyor, to "shoot the hole, to determine the volume of material that we took out, and the volume of rock that we put back in." CP at 294; *see also* CP at 294-97. We acknowledge that this conflicts with an SCS Engineers' field report and testimony from an SCS Engineers' project director, indicating that none of the company's employees were at the construction site until about an hour after Neice got injured. But we must view these facts in the light most favorable to Neice and assume his recollection is true.

However, even assuming Neice's testimony is true, SCS Engineers did not step into the shoes of the landowner to actually exercise control over the portion of the premises where Neice was injured. SCS Engineers' contract emphasizes that their role was as an engineering consultant, not a general contractor. SCS Engineers told Neice, a surveyor, where and what to survey. This instruction was necessary for SCS Engineers as consulting engineers to ensure Scarcella's work was being done according to SCS Engineers' specifications. The general direction of engineering-related tasks did not give SCS Engineers—rather than Scarcella or LRI—control over the portion of the premises where Neice was injured. There is no suggestion that SCS Engineers ever had actual control over this portion of the landfill in the sense of undertaking management of safety precautions for Scarcella or LRI's workers, the basis of Neice's claim.

As a result, we conclude that there is no genuine issue of material fact as to whether SCS Engineers had immunity under the statute from the claims that Neice bought in this lawsuit. We need not reach the issue of whether SCS Engineers had a duty under WISHA to warn Neice of the potential hazards of landfill gases because we have concluded that dismissal of Neice's claims against SCS Engineers was appropriate based on immunity.

## CONCLUSION

We reverse the trial court's dismissal of Neice's premises liability claim against LRI and otherwise affirm.

No. 58519-7-II

GLASGOW, J

We concur:

MAXA, J.

CRUSER, C.J.

23